## Case No. 10,854.

PAYNE v. ABLE.

[This is a state case. See 13 Int. Rev. Rec. 31.]

———

## Case No. 10,855.

PAYNE v. ALLEN.

[1 Spr. 304.] [2]

District Court, D. Massachusetts. Oct., 1855.

SEAMEN—RECEIPT IN FULL OF ALL CLAIMS—CONSTRUCTION—AMBIGUITY—FLOGGING—INCOMPETENCY.

1. Where a seaman, in a whaling voyage, upon his discharge in a foreign port, signed a writing, acknowledging that he had received a certain sum, in full of his share of the proceeds of the voyage, and relinquishing all claims against the owners, master and officers, held, that the relinquishment was only of the claim for which he had received compensation, and not of claims for personal violence committed by the master.

[Cited in Gabrielson v. Waydell, 135 N. Y. 9, 31 N. E. 972.]

2. If such receipt be ambiguous, the ambiguity is not to prejudice the seaman.

3. Since the proviso in St. 1850. c. 80, § 1 (9 Stat. 515]. punishment by flogging on board of a whale ship is illegal.

———

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

4. Incompetency to perform the duties of the station for which an officer or seaman has shipped, is no justification for the infliction of punishment.

In admiralty.

Mr. West, for libellant.

A. Mackie and A. S. Cushman, for respondent.

SPRAGUE, District Judge. The libellant was cooper, and the respondent master, of a whale ship. This suit is brought to recover damages for personal wrongs. The libel sets forth, in distinct articles, several acts of personal violence, and in another article alleges general and continued ill-usage during the voyage. The answer sets up a written release of the libellant, and denies some of the allegations in the libel, and justifies others, as the infliction of merited punishment. The first question is upon the sufficiency of the release. The voyage commenced in May, 1852, and ended by the return of the ship in February, 1855; the libellant continued on board, as cooper, until December, 1854, when he was discharged at St. Helena. The release relied upon was given at the time of that discharge, and is in the following words: "St. Helena, December 22d, 1854. I, John Payne, cooper on board the whaling bark 'Kathleen,' of New Bedford, do hereby declare, that having been discharged by mutual consent from said vessel, at this port, I do acknowledge to have received of Captain Allen, five hundred dollars ($500), as my share of the entire voyage thereof, in relinquishment of all and every claim against the said vessel, her cargo, captain, owners, officers, and crew, of which this is evidence. John Payne. Witness: Geo. W. Kemball, U. S. Commercial Agent."

It is to be observed, that the receipt declares that the $500 is received as his share of the entire voyage, that is, as his share of the proceeds of the voyage. It then goes on to say, that it is in relinquishment of all and every claim against the vessel, cargo, owners, captain, officers and crew. Claim for what? The natural answer would be, for that for which he had received compensation, that is, his share. The relinquishment is to be so construed, as to be co-extensive with the compensation, if it can be, without violence to language. Such instruments, between master and mariner, are usually written by the master, or by some person acting for him, and if he leaves the instrument ambiguous, such ambiguity is not to prejudice the seaman. It does not appear from the receipt, that any compensation was received for personal violence inflicted by the master, but the contrary is implied; it is not, therefore, sufficient to preclude the libellant from maintaining an action for such violence. The parol evidence does not strengthen the receipt, nor show that compensation was received for anything, except the services of the libellant. As to the injuries inflicted, the

first was the flogging off the Western Islands, when about three months out. It appears that the boat of another ship being alongside, in the evening, the libellant and one other man took her furtively and went toward the shore, but were discovered, pursued, and brought back. For this offence, the master caused the libellant to be tied up in the rigging, and inflicted upon him twelve blows with ratline stuff over the back, he having on one or two woolen shirts. As the law formerly stood, when flogging was allowed, I should have held this punishment to be justified by the offence; but such punishment is now illegal, and cannot, therefore, be justified. The evidence shows that similar blows were inflicted, at a subsequent time, because the libellant got asleep at the mast-head, while there on duty looking out for whales. One would think that the danger to himself would be a sufficient security against his indulging voluntarily in such a practice; and that it could be the result only of physical infirmity, for it appears that he had not secured himself against falling and the mate testifies that the reason of flogging him was the danger that he would fall upon and injure some of the officers. I am not satisfied that this punishment was justifiable, even under the old law; it certainly is not, since the present statute. Several instances of punishment of a different character, at various times during the voyage, had been proved; such as his being compelled to stand on his hands and feet, with his head to leeward; kneeling on the top of the house with his head in the funnel of the galley; and standing on deck, with a rope about his neck. The degree and severity of these punishments are much controverted; others are alleged, about which there is much doubt from the evidence. The justification set up is mainly disobedience of orders, inattention, negligence, and incompetency to perform the duty of cooper, for which he shipped. There is evidence tending to show that the libellant was not a good cooper, and did not perform his duty well, certainly not to the satisfaction of the captain. And it is insisted by the respondent, that this arose partly from inability. I do not think it necessary to form an opinion in this case, whether the libellant was competent to perform the duties of cooper or not, because, if incompetent, that would be no justification for punishment. The power of a master to punish, is given only for the purposes of the voyage, as a means of accomplishing its object, by preventing the recurrence of those offences which interfere with, or may defeat, the successful prosecution of the enterprise. If a man is unable to perform his duty, that inability is in no degree diminished by the infliction of personal suffering; and punishment for such cause, therefore, is not allowed. If the libellant shipped for a station for which he was not qualified, it may have been done ignorantly or fraudulently. Never having been to sea before, he may have thought himself fitted for a sea-life, and for the office of cooper on board of a ship, although experience may show that he was not; or he may have known that he had not the requisite skill for the office he undertook to fill. But even in the latter case, that is, a fraud in shipping as a competent cooper, the master would have no right to punish him for such fraud. Punishment would not cure the fraud, diminish the inability, or in any manner further the objects of the voyage; though incompetency might be a ground for reducing compensation, or for damages for the violation of his contract, but not for the infliction of corporal suffering. Whether, therefore, the incompetency existed or not, in regard to which I give no opinion, it would be no justification for the punishment inflicted. Some negligence and inattention is shown, but I do not think sufficient to justify the treatment which has been proved, and the libellant is entitled to damages.

Decree $125, and costs.