CHARLES G. GABRIELSON, Respondent, *v.* FREDERICK WAY-DELL et al., Appellants.

The owners of a vessel are not liable in damages for the willful and malicious acts of its master in assaulting and injuring a seaman while upon the high seas; such an act being of a criminal nature, is not in violation of any duty imposed upon the owners by maritime law, and the doctrine of *respondeat superior* has no application. (MAYNARD, FINCH and O'BRIEN, JJ., dissenting.)

*Scarff* v. *Metcalf* (107 N. Y. 211); *Hunt* v. *Colburn, Luscom* v. *Osgood* (1 Sprague, 215, 82); *Sherwood* v. *Hall* (3 Sumner, 127), distinguished.

The master and seamen of a vessel are engaged in a common employment and are fellow-servants, although of different grades, and while the master in rendering to the seaman that care and in performing those duties imposed upon its owners by the maritime law represents them, and for a neglect of duty in these respects they are liable, in all matters outside the scope of the master's employment and without the authority committed to him by maritime law, his misconduct is a risk assumed by the seaman, for the consequences of which the owners are not responsible.

*C., etc., R. R. Co.* v. *Ross* (112 U. S. 377), disapproved.

(Argued April 20, 1892; decided October 4, 1892.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made October 16, 1891, which affirmed an order denying a motion

SICKELS—VOL. XC.    1

for a new trial, overruled defendants' exceptions ordered to be heard in the first instance at General Term, and directed judgment upon a verdict in favor of plaintiff.

This action was brought to recover damages against the owners and captain of a vessel upon which plaintiff had shipped as an able seaman, and while in such service, had received grave injuries.

During a voyage from the West Indies to the United States, upon a certain occasion, being ordered by the mate to "turn to," he said he was sick and not able to go on deck. He had previously suffered from chills and fever, and what he was then suffering from seemed to be an attack of a similar nature. The captain came into the forecastle and ordered him to go on deck. Plaintiff told him he was sick. The captain then hit him several times, while lying in his bunk; pulled him out of his bunk and said, "will you go on deck now?" Plaintiff said, "I feel sick; I am not able to go on deck." The captain again hit him several times with his fist, and upon plaintiff's catching hold of his arm, then kicked him upon the leg, breaking the bone below the knee. There was no struggle between the men, nor any provocation for the captain's treatment beyond plaintiff's complaint of illness. He was placed back in his bunk and his leg rudely placed in splints. Upon the arrival of the vessel at New York he was taken to the hospital and remained there until discharged as cured. The captain was not served with the summons and complaint, as he had never returned from a subsequent voyage and was supposed to have been lost. The trial judge denied a motion for a nonsuit and permitted the case to go to the jury, and plaintiff recovered a verdict.

*N. B. Hoxie* for appellant. The owners of a vessel are not liable for the willful and malicious acts of its captain. (*Scarff* v. *Metcalf*, 107 N. Y. 216.) At common law the claim of the plaintiff is without foundation. (*Hoffnagh* v. *N. Y. C. & H. R. R. R. Co.*, 55 N. Y. 610; *Cahill* v. *Hilton*, 106 id. 512; Story on Agency, § 456; *Wright* v. *Wilcox*,

19 Wend. 343; *Lyon* v. *Martin,* 2 Ad. & El. 512; *Fraen* v. *Freeman,* 43 N. Y. 569; *Vanderbilt* v. *R. T. Co.,* 2 id. 479.) The plaintiff and the captain were fellow-servants of the owners of the vessel, engaged in the same general business or employment, *i. e.,* the navigation of the vessel, and as the injury the plaintiff complains of resulted from the misconduct of a fellow-servant the owners are not liable to respond therefor. (*Crispin* v. *Babbitt,* 81 N. Y. 516; *McCosker* v. *L. I. R. R. Co.,* 84 id. 77; Wood on Mast. & Serv. § 438; *Loughlin* v. *State,* 104 N. Y. 159; *Scarff* v. *Metcalf,* 107 id. 211; *Farwell* v. *B. & W. R. R. Co.,* 4 Metc. 49; *Bolt* v. *N. Y. C. R. R. Co.,* 18 N. Y. 43; *Wright* v. *N. Y. C. R. R. Co.,* 25 id. 562; *Filbert* v. *D. & H. C. Co.,* 121 id. 212; *Hussey* v. *Coger,* 112 id. 614; *Brick* v. *R. R. R. Co.,* 98 id. 211.) The master of a vessel is the *alter ego* or representative of the owners only in the performance of the duty which such owners owe to a sailor and which is by them devolved upon the master. (*Crispin* v. *Babbitt,* 81 N. Y. 516; *Johnson* v. *B. T. Co.,* 135 Mass. 209; *Matthews* v. *Case,* 61 Wis. 491.) If the liability of a principal to a stranger can be invoked in favor of the plaintiff in this case, the facts do not warrant a recovery. (*Rounds* v. *D. & L. R. R. Co.,* 64 N. Y. 129; *Hunter* v. *N. Y., O. & W. R. R. Co.,* 116 id. 624; *Kelly* v. *Doody,* Id. 580.) As by the submission of the question to the jury and their verdict, the assault has been determined to have been within the scope of the captain's duty, such assault was clearly one of the risks of plaintiff's employment which he assumed. (*Gurney* v. *G. T. R. R. Co.,* 59 Hun, 625; *Gibson* v. *E. R. Co.,* 63 N. Y. 452.) The judgment should be reversed, and as it is clear that the issue cannot be decided in more than one way upon another trial, that the respondent cannot prevail in the suit, final judgment should be rendered in favor of the appellants. (*Ehrichs* v. *DeMill,* 75 N. Y. 374; *Foot* v. *Æ. L. Ins. Co.,* 61 id. 578.)

*George P. Gordel* for respondent. The owner of a vessel is liable for the willful act of the master performed within the

scope of his duty and to further the interests of the owner. (*Rounds* v. *D., L. & W. R. R. Co.*, 64 N. Y. 129; *Cohen* v. *R. R. Co.*, 69 id. 170; *Dwinelle* v. *N. Y. C. & H. R. R. R. Co.*, 120 id. 117; *Stewart* v. *B. & C. R. R. Co.*, 90 id. 588; *Hoffman* v. *N. Y. C. & H. R. R. R. Co.*, 87 id. 25; *Mott* v. *C. I. Co.*, 73 id. 543; *Thompson* v. *Herman*, 47 Wis. 602; *Sherwood* v. *Hall*, 3 Sumn. 127; *Cromber* v. *Oakman*, 3 Allen, 185; *Scarff* v. *Metcalf*, 107 N. Y. 482.) The master of a vessel on the high seas, when inflicting punishment on a seaman or enforcing discipline, is not the fellow-servant of the seaman. (*Chamberlain* v. *Chandler*, 3 Mason, 242; *Waterbury* v. *Myrick*, B. & H. 34; *The Centurian*, 1 Ware, 477; U. S. R. S. § 4596, subd. 455; *Jordan* v. *Williams*, 1 Curt. 69; *R. Co. v. Herbert*, 116 U. S. 642; *Daub* v. *N. etc., Co.*, 18 Fed. Rep. 625; *The Titan*, 23 id. 413; *Garratry* v. *K. etc., Co.*, 25 id. 258; *Walcott* v. *Studebaker*, 34 id. 8; *Van Avery* v. *Union etc., Co.*, 35 id. 40; *The A. Heaton*, 43 id. 593; *The City of New York*, 25 id. 150; *Baker* v. *Corey*, 19 Pick. 496; *Luscomb* v. *Osgood*, 1 Sprague, 82; *Pickering* v. *Holt*, 6 Me. 160; *Crispin* v. *Babbitt*, 81 N. Y. 516; S. & R. on Neg. § 230; *Flike* v. *B. & R. R. Co.*, 53 N. Y. 554.) The charge of the judge as a whole having conveyed the correct rule of law, no specific exception to it will be sustained. (*Caldwell* v. *N. J. S. Co.*, 47 N. Y. 282.)

GRAY, J. The question, brought up by this record, is whether the owners of a vessel can be made liable in damages for the willful and malicious act of their captain in assaulting and injuring a seaman while upon the high seas. The learned trial judge, in denying the motion to dismiss the complaint, proceeded upon two grounds: namely, that the captain was the representative, or *alter ego*, of the owner and was not a fellow-servant with the plaintiff; and that the willful and malicious nature of the captain's act constituted no ground for an exception to the liability of the owners, if the act was performed within the general scope or course of his employment. Therefore, he left it to the jury to decide whether, in what

he did to the plaintiff, the captain was acting in the line of his duty.

I think this appeal should prevail. There was no conflict in the evidence and it proved a willful assault by the captain of the vessel upon one of the seamen; which nothing in the evidence, or within any principle of the maritime law, justified as coming within a proper, or an intended, exercise of authority. For its occurrence the owners cannot be held responsible, in my opinion, either upon sound reasoning, or upon any sufficient precedent; and the trial judge should have dismissed the complaint. I concede, fully, that we should, in determining this question, be guided by the principles of the maritime law. The plaintiff's employment was, of course, a maritime contract. It is matter of familiar knowledge that about the mariner, the maritime law throws a protection greater than is extended by the general rules of the common law to him who is employed in a service upon the land. This distinction arises, very naturally, from the difference in the nature of a mariner's life and employment; which subject him to hazards and hardships and tend to make him heedless in character. So the maritime law is peculiarly solicitous of his rights and watches over his more unprotected condition. Thus, for instance, it is strict in requiring shipping articles and liberal in interpreting them for the seaman's interests, in the presence of unfair, or inadequate provisions. It obliges the owners to provide a seaworthy vessel; it requires that the vessel shall be provided with proper appliances for the seaman's safety and with adequate and proper food for his sustenance; and it imposes the duty of providing for his medical care and attendance in case of sickness or wounds. From the seaman a faithful and strict performance of his duties is required, and, because of the responsibility devolving upon the master of the vessel for the successful conduct of the voyage, considerable latitude in disciplinary powers is allowed to him; though no cruel or excessive punishment is sanctioned. In rendering to the seaman that care and in performing those duties toward him which

the law exacts from the owners of the vessel, the captain for such purposes represents them and a neglect of his, in such respects, is visited upon the owners. This liability follows from the situation of the parties. The owners are not in charge of the vessel. They remain upon the land and employ a master for the vessel; as well to carry out their assumed, or implied, obligations to the members of the ship's company, as to perform the undertaking of conducting the craft successfully upon its voyage. The delegation of powers to the master of the vessel comprehends their exercise in all such ways as the safety of the vessel and the welfare of its company render needful, or expedient. While in those respects, which demand of the owners the rendition of certain duties towards the crew, the master of the vessel must and does represent them and, by his failure or neglect, will entail consequences upon them for the breach of the obligation, he is, notwithstanding his representative and superior position, but a servant; employed with the others of the ship's company upon the vessel in the service of its owners. The scope of the service varies, as the position of the individuals employed differs; but, relatively to the general undertaking, they are fellow-servants engaged in one common employment.

In *Scarff* v. *Metcalf* (107 N. Y. 211), which was an action by a mate against the owners of a vessel to recover damages for negligence in omitting to provide him with adequate medical attendance and care, the plaintiff's recovery was sustained in this court upon the ground that there had been a neglect of a duty imposed by the maritime law. Such a duty has always been recognized and was prescribed in the laws of Oleron and Wisbuy. What that case decided, with respect to the liability of the owners of a vessel to a seaman for a neglect of the captain, was that it existed whenever his neglect concerned something as to which a duty rested upon the owners under the principles of the maritime law; which, by force of the situation, could only be discharged through the agency of the vessel's master. Its effect is to hold that in matters relating to the owners' duty to the seaman, which the

captain must perform, his neglect could not be regarded as merely that of a fellow-servant, but as the neglect of the owners.

Cases which relate to the rights of passengers, or third persons, I do not consider as precedents, and several of that nature have been referred to. In the one class of cases the passenger's contract for transportation entitles him to protection against the negligence or assaults of the employees of the carrier. In the other class strangers have the right to hold the owners liable for the consequences of a willful act of the captain performed while engaged in the prosecution or execution of the owners' business. The cases of *Hunt* v. *Colburn* and *Luscom* v. *Osgood* (1 Sprague, pp. 215 and 82) related, as to the first, to the wrongful dismissal of an officer; and, as to the second, to the right to compensation for a minor's services; and I cannot see in them precedents for the decision of this case. Nor is the case of *Sherwood* v. *Hall* (3 Sumner, 127) an authority. That was an action for the shipment by the master of a vessel of the minor son of the libellant, and he recovered a certain amount of wages and something for expenses and losses. The master there was the agent of the owners in shipping seamen to be employed on their vessel.

The responsibility for the wrongdoings of the master of a vessel rests to a certain extent only upon the owners, and that extent is reached when the performance of the act complained of cannot be seen properly to come within some principle of the law of agency. The agency of the captain for the owners would include all those acts which are fairly embraced within the scope of his appointment, and which would be in the line of his duty; but when he injures his men by misconduct or assault, that would seem to be as much one of the risks which they assumed in entering the employment upon the vessel, as it would be one in the case of an employment in a concern upon the land where the control and superintendence had been committed by the proprietor to a manager. It is impossible to regard a wanton assault upon a seaman by his captain

as something within any intended authority, or within the scope of his employment. He outruns his authority and commits an act which the owners will not be presumed to have assented to. I believe that by no extension of the principles of the law of master and servant, the general source of the law of principal and agent, could the blame be imputed to the owners of the vessel. It should at least appear that the act of the captain was required by the pressing emergencies of the occasion, and not that he had indulged his passions by a vindictive treatment of the seaman.

In the cases of *Dias* v. *The Privateer Revenge* (3 Wash. C. C. 262) and of *Ralston* v. *The State Rights* (Crabbe, 22), the distinction is recognized between the acts of a master of a vessel done while engaged in the course of his duty in the prosecution of the owners' business and those wholly outside of the scope of his employment. In the one case, the illustration was of a piratical seizure, and in the other, it was of the commission of a crime by the captain; neither of which acts can be imputed to his owners, or be intended to come within the employment or authority committed to him. In *Wilson* v. *Rankin* (6 Best & Smith, 208), which was an action to recover insurance moneys, the question turned upon whether the authority of the master of a vessel was of such a general nature as to subject the owners to the consequences of his having stowed the cargo in violation of the statute. Judgment was rendered for plaintiff, and COCKBURN, C. J., in delivering the opinion of the court, used language quite applicable here. He said that " it is a well-established distinction that, while a man is civilly responsible for the acts of his agent, when acting within the established limits of his authority, he will not be criminally responsible for such acts, unless express authority be shown, or the authority is necessarily to be implied from the nature of the employment, as in the case of a bookseller held liable for the sale by his shopman of a libellous publication. Under ordinary circumstances, the authority of the agent is limited to that which is lawful. If, in seeking to carry out the purpose of his employment, he

oversteps the law, he outruns his authority and his principal will not be bound by what he does." And again he said that "no authority can be implied in the master, in the discharge of his duty, to do that which, with reference to this part of his duty, was a violation of the law."

What was the act here complained of, if not a willful and unjustifiable assault? It was not disciplinary, for the idea of discipline does not suggest a personal attack with blows and kicks; and incompetency, or inability, does not justify punishment. (*Payne* v. *Allen*, 1 Sprague, 304.) It was certainly within the category of those offenses for which the United States Statutes have prescribed the punishment of fine or imprisonment. (U. S. Rev. Stat. § 5347.) It was of a criminal nature, and, hence, not intended by the law to be within the scope of the employment of the captain, nor within the authority committed to him.

Conceding all that we should to the force of the established principles of maritime law in determining the question of liability here, we cannot say that the general rule at common law is interfered with in its application to the case; or that those principles of the maritime law establish any different rule. There is no question but that the powers of a captain of a vessel are very extensive by virtue of his peculiar position. His great responsibilities and the general interests of commerce invest him with much discretionary power. His is the agency to which the law looks for the fulfillment of the obligations resting upon the vessel's owners; and for his shortcomings and wrongdoings, when occurring in the performance of his duty or in the scope of his employment, those owners must be liable. The more extensive powers and wider control exercised by the captain enlarge the field of service and necessarily heighten the responsibility of the owners to passengers, servants, or strangers; but, after all that can be said, where is the warrant for holding them liable for the consequences of acts which are in utter departure from the execution of a duty? He has absolute command over the seamen in matters pertaining to their duties; but his command does

not extend over their persons beyond the infliction of usual and necessary punishment in cases of disobedience or infraction of rules.

We are then brought to the consideration of the rule of liability which would be applied to this case under the law as settled by this court, and there we will find the rule is not *respondeat superior.* We find that for an injury, resulting to an employee from the willful neglect, or tortious act of another, who is engaged in a common employment with him, the master is not liable at the suit of the injured employee. He has performed his duty when he has furnished to those who are employed by him a reasonably safe place, appliances adequate to the purposes of the employment, and when he has appointed as fellow-servants in the undertaking proper persons, competent for their positions. After that, for what may happen from the risks of the employment, or from the negligence and torts of fellow-servants, he will not be responsible. In the early case in this court of *Keegan* v. *W. R. R. Co.* (8 N. Y. 175), RUGGLES, Ch. J., stated the general rule thus: "Whenever the injury results from the actual negligence or misfeasance of the principal, he is liable as well in the case of one of his servants as in any other. But where the injury results from the actual fault of a competent and careful agent (as may sometimes happen) the fault will not be imputed to the principal when the injury falls upon another servant as it will where the injury falls on a third person, as for instance on a passenger on a railroad. In the case of a passenger the actual fault of the agent is imputed to the principal on grounds of public policy; in the case of a servant it is not."

There is no evidence in this case that the owners failed in a compliance with any obligation to their employees in the ship's company, in the selection of a proper and competent captain; and were they to be accountable for his loss of temper or misconduct toward the other employees? I think not.

The proposition that the master of a vessel is not a fellow-servant of the seaman is predicated upon the difference in

their grades, and it has received the support of a decision in the United States Supreme Court, in the case of *Chicago, etc., R. R. Co.* v. *Ross* (112 U. S. 377), upon which case subsequent decisions in the federal courts have been based, which are referred to in the respondent's brief. The opinions in the cases of *"The Titan"* (23 Fed. Rep. 413); *"The Sachem"* (42 id. 66); and of *"The A. Heaton"* (43 id. 593), which are referred to by the respondent, were expressly rested upon the *Ross* case.

*Spencer* v. *Kelley* (32 Fed. Rep. 838), which seems to give some support to the respondent's contention, was at *nisi prius.* The trial judge's remarks in his charge, if susceptible of the meaning attached to them, have no support, unless in the *Ross* case. He certainly refers to no authority. The *Ross* case was decided by a mere majority of the justices and is of questionable authority. It is without weight in this state, and has been distinctly disapproved in *Loughlin* v. *State* (105 N. Y. 159). Judge ANDREWS, speaking there of the responsibility of employers for injuries sustained by servants from the negligence of co-servants, remarked: "In harmony with the general principle that the character of the act is the decisive test, it has been repeatedly decided in this court that the fact that the person whose negligence caused the injury was a servant of a higher grade than the servant injured, or that the latter was subject to the direction or control of the former, and was engaged at the time in executing the orders of the former, does not take the case out of the operation of the general rule, nor make the master liable."

The learned judge, referring to the citation of the *Ross* case, said it was "in conflict with the course of decisions in this state and elsewhere." That case and many prior decisions of this court, to some of which Judge ANDREWS refers, have settled the rule that the liability of the master for a servant's injury, received while in his employment from the act of another servant, does not depend upon the grade or rank of the offending or negligent servant. The liability of the master to his servant in such cases does not depend upon the

doctrine of *respondeat superior.* That doctrine has no application and if a servant, under guise of exercising the authority conferred upon him, willfully and maliciously does an injury to another servant, the servant's master is not liable. As to such a matter the relation of master and servant affords no ground for an action. (*Sherman* v. *Rochester, etc., R. R. Co.,* 17 N. Y. 153; *Hofnagle* v. *R. R. Co.,* 55 id. 610; *Malone* v. *Hathaway,* 64 id. 5; *Crispin* v. *Babbitt,* 81 id. 516; *Loughlin* v. *State, supra.*)

In every case, it is the character of the act which causes the injury to a fellow-servant that determines the question of the master's liability, and the dividing line may be found in the willfulness, or in the neglect, which caused it.

It was said in *Wright* v. *Wilcox* (19 Wend. 343) that the master is not accountable for every mischievous act of the servant, which he is enabled to commit in consequence of the general relation; and Lord KENYON remarked in *McManus* v. *Crickett* (1 East. 106): "When a servant quits sight of the object for which he is employed, and without having in view his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him."

The law may be regarded as settled in the English courts, for a number of years, that the master is not liable to a servant for an injury occasioned by the negligence of a fellow-servant, although he be a vice-principal or the manager of the concern. (*Priestley* v. *Fowler,* 3 M. & W. 1; *Wilson* v. *Merry,* L. R. 1 H. of L. Sc. 326; *Howells* v. *Lansdore Steel Co.,* L. R. 10 Q. B. 62.)

There is a very recent case, quite in point, decided by the English Court of Appeal. In *Hedley* v. *Pinkney & Sons Steamship Co.* (L. R. Q. B. Jan. 1892, 58), that court decided, reversing a judgment recovered below, that ship-owners were not liable in damages for the death of one of the crew of a steamship, occurring by reason of the captain's negligence, in a matter pertaining to the care of the ship. It was there held that the captain and men were fellow-servants, engaged in a common employment, and for the injury result-

ing to the one from the negligence of the other their master was not liable. Reference was made in the opinions to the case of *Ramsay* v. *Quinn* (Ir. Rep. 8 C. P. 322), where a contrary view was taken by the Irish Court of Common Pleas as to the liability of the shipowners and as to the relations of the captain and seamen, and the Court of Appeal refused to accept or to agree with that decision as authority. KAY, L. J., in his opinion in the case, said, in referring to *Wilson* v. *Merry* (*supra*), which was a case where a miner was killed through an explosion caused by the negligence of a manager of the mine : " I see no difference between that case and the case of a captain of a ship and one of the crew."

I think there is no reason for applying any different rule of law in this case than that recognized in our own and in the English courts. However great may be the powers of a captain of a vessel, and however absolute his control, these considerations do not furnish a reason for holding his owners responsible for his malicious conduct towards the other seamen. They are all working together in the same undertaking and are in a common service, and his misconduct is one of the risks the seaman assumes. I am not satisfied that there is any principle of the law which intends, or that any consideration of public policy demands, that the owners shall come under any obligation to indemnify a member of the ship's company against such negligent or tortious acts of the captain.

I deem it, too, somewhat significant that no case is referred to in the Admiralty or United States Circuit Court reports prior to the decision in the *Ross* case (*supra*), where the owners of a vessel have been sued for the captain's tortious acts, and my own examination has revealed none; though I find many cases where the captain has been sued for damages. For instance, in *Thomas* v. *Lane* (2 Sumner C. C. decided in 1834) the captain was sued and held as jointly liable with a mate for the mate's tort. In *Forbes* v. *Parsons* (Crabbe, 283, decided 1839); in *Fuller* v. *Colby* (3 Woodb. & Minot, 1, decided in 1846); in *Jordan* v. *Williams* (1 Curtis C. C.

69, decided in 1851), and in *Payne* v. *Allen* (1 Sprague, 304, decided in 1855), the libels were against the captain for personal wrongs from his acts of violence and ill-usage. I am quite unable to perceive any reason for holding the owners of this vessel responsible for the mere passionate and vindictive act of their captain. The complaint should have been dismissed by the trial judge on the motion of their counsel.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to abide the event.

MAYNARD, J. (dissenting). Under the maritime law, the master of the ship has plenary powers as the agent and representative of the owners. He selects, hires and discharges the seamen at his pleasure. He has supreme control of the management and navigation of the vessel, with which even the owners themselves, if present, cannot interfere. He determines all matters relating to the discipline of the crew, and the kind of punishment to be inflicted for disobedience of orders, or for a breach of maritime regulations, and when and by what instrumentality it shall be administered. While on ship-board his word is law, and he is, in fact as well as in name, the "master" of the vessel. He may, when necessary, purchase supplies upon the credit of the ship, and in certain emergencies hypothecate and even sell it without the knowledge or express assent of the owners.

Having clothed the master with such extraordinary powers, it is not surprising to find that, in discussing the extent of the owner's liability for his acts, the writers upon maritime law have asserted that the master is bound to the owners, and he and they to everyone who may be affected by his acts, for his skill and attention in the management of the ship. It is not sufficient that he exercises his best judgment. He is bound to show that he possessed and exercised the judgment of a good commander, with reasonable skill, care, prudence and fidelity. (Curtiss, p. 195.) By the general maritime law of continental Europe, the responsibility of the owners for the master's obligations, *ex delicto*, might be limited to their inter-

est in the vessel and freight, if they so elected; but neither the civil law nor the common law of England recognized any such limitation, and it has, therefore, been said that the owners are personally liable for all the obligations which the master incurs, within the scope of his authority as master, to their full extent, whether arising *ex contractu* or *ex delicto*. (Id. pp. 198, 199; Parsons on Maritime Law, 94, 391.)

In one case, the Admiralty Court held that the owners were answerable for torts committed by the captains they employed, under a general principle of the maritime law, and not by virtue of any special contract. (*Dean* v. *Angus*, Bee. 375.)

While all these authorities assert the liability of the owners in terms so general and so broad as to include the tortious acts of the master towards the members of the crew, yet it is evident that attention was not specially directed to this class of cases, and we do not, therefore, feel at liberty to hold that any different rule is to be adopted in ascertaining and measuring that liability than has been applied by this court where the servant has sought to render his employer responsible for injuries received in other than maritime employments. The ship-master and the crew were all engaged in a common undertaking, and unless the acts of which the plaintiff complains were in some form a violation of the obligations which the defendants assumed as a part of the contract of hiring, or of some positive duty imposed upon them by law, he cannot be permitted to maintain this action. (*Crispin* v. *Babbitt*, 81 N. Y. 516; *Loughlin* v. *State*, 105 id. 159.) There is, however, an exception to this rule, which is noted by Wood in his treatise on Master and Servant, at page 864 (§ 438): "If he (the master) places a servant in a position of authority over other servants, and makes the inferior servants subject to the direction and control of the superior, while he is not chargeable for the consequences of directions given by such superior servant within the scope of the general employment, yet there is no reason why he should not be chargeable to a co-servant for an abuse of such authority as much as he would be to a stranger." The gravamen of the plaintiff's cause of action is

that he was cruelly and unnecessarily beaten by the ship-master for an excusable refusal to obey his orders, and it may, therefore, well be questioned whether the case is not brought within the exception here referred to.

But we think the liability of the defendants in this case rests upon a much broader ground. If the plaintiff's testimony is worthy of belief, his injuries were the direct result of their failure to observe their contract obligations and duties towards him.

The mariner's contract of hire is *sui generis*. It differs in many essential respects from the ordinary contract for service upon land. When once undertaken by a seaman he cannot withdraw from it at his pleasure. If he leaves the service without good cause he may be branded as a deserter and a criminal, and may be arrested by his employers without process or warrant and forcibly compelled to return to the vessel and complete his engagement for service. He may be put in irons or confined in jail in a foreign country, or instantly subjected to corporal punishment, if, in the judgment of his employers, he is remiss in his duty or disobedient to his superiors, or guilty of any conduct subversive of the good order or discipline of the ship.

As stated by an eminent American writer upon the subject: " It is the only form of service stipulated to be rendered by a freeman of full age, known to the common law, in which the employer by his own act can directly inflict a punishment on the employed, for neglect of duty or breach of obligation." (Curtiss, p. 12.) These manifestly harsh and oppressive features of the service, as well as other hardships and exigencies frequently encountered in it, gave rise to the imposition of correlative duties and obligations upon the part of the ship-owners. We, therefore, find that some of the most important stipulations in the seaman's contract for hire are not usually contained in the shipping articles at all, but are dependent upon the principles of the maritime law.

They are none the less obligatory upon the parties than if they had been inserted in the written compact between them.

One of these guarantees upon the part of the owners, which is of supreme moment to the mariner, on account of his defenseless and perilous position upon the high seas, is that he shall have good treatment and be protected from unnecessary violence. Special emphasis is placed upon this right in all the elementary works on the subject. Parsons, in his Maritime Law (Vol. 1, p. 476), in speaking of the correlative obligations of the owners and the seaman, says that the former stipulate in the contract of hiring " for good treatment and the due payment of wages." In Abbott on Shipping (p. 174), it is said : " The duties of the mariners and the master are reciprocal ; from the former are due obedience and respect, from the latter protection and good treatment."

George Ticknor Curtiss, in his treatise on the Rights and Duties of Merchant Seamen, takes up, *seriatim,* the general obligations of the parties to the mariner's contract, and which may, or may not, be included in their written agreement, saying (p. 19) : " Although the articles are wholly silent upon such points, law and reason will imply certain engagements on the part of the master and owners, which are equally as imperative as those expressed in writing." He then enumerates eight different obligations entered into by the owners as a part of the contract of hiring, the fifth of which is stated in these words (p. 26) : " It is further a part of the general obligations of the contract that the mariner shall be treated with decency and humanity by the master and the officers, and by his shipmates," and he concludes the enumeration by saying (p. 28) : " These are some of the important obligations assumed by the owner and master in the hiring of mariners."

In 1 Kay on Shipmasters and Seamen it is stated (pp. 574, 575) : " The crew have rights which are as carefully defined and enforced by law as their duties. Irrespective of statute, the obedience and skill of the seaman entitle them to remuneration, protection, humane and just treatment, proper food, if it is procurable, and care in the event of sickness."

The 16th admiralty rule of the U. S. Supreme Court, provides that in all suits for assault and battery, or beating, the

suit must be *in personam* only; and Benedict in his Admiralty Practice, commenting on this rule (§ 309) says: "This is, undoubtedly, true where the action is technically for the assault and battery as a mere tort; but it would seem on principle, that if the action be brought on the contract, as for not carrying the passenger safely and without injury, or for not treating with proper kindness a passenger or seaman, an assault or beating, being the gravamen of the breach, the suit may be *in rem* against the vessel."

No distinction is here made between the ill treatment of a passenger and of a seaman. In the very early case of "The Ruckers" (4 Rob. Ad. Rep. 60) it was sought to maintain a libel against the ship for an assault by the master upon a passenger on the high seas, and there does not seem then to have been any precedent for such an action; but as it was conceded that the proceeding would have been upheld if it had been the case of an assault upon a seaman, it was insisted that a passenger was entitled to the same remedy, and it was so held by Sir William Scott.

The inference from the case is, that the seaman's right to reimbursement for injuries of this character antedates, in point of judicial recognition, that of the passenger.

In the case of *Rice* v. *The Polly and Kitty* (2 Peters 420) the seamen were cruelly beaten by the mate. They appealed to the captain for protection, which he denied them and punished them for complaining. They then left the service, and it was held that the contract of hiring was broken in consequence of their cruel treatment, and that they could recover their full wages.

Judge PETERS, a high authority upon this branch of the law, says (p. 421): "I would observe here, as I did lately upon another occasion, that although the sole contract mentioned in these articles (*i. e.* the shipping articles) on the part of the master or owner, is the payment of wages; yet law and reason will imply other obligations, such as that the vessel should be seaworthy and properly fitted for navigation; that the mariners shall be supplied with sufficient meat and drink;

and that they shall be treated with, at least, decent human-
ity." In a foot note it is stated that "the claims of seamen
to wages, under circumstances similar to those mentioned in
this case, for the whole voyage have been frequently allowed
in the District Court by Judge PETERS, and that there are
many cases in the English books, in which the principles, on
which such claims are founded, have been recognized."

In *Ward* v. *Ames* (9 Johns. 138), our own courts held that,
if during a voyage a seaman is compelled to leave the ship on
account of ill usage, or cruel treatment by the master, or
through his agency and for fear of his personal safety, the
contract is broken and it is not a case of voluntary desertion;
and he is entitled to recover his wages for the whole voyage.

To the same effect is *Sherwood* v. *McIntosh* (1 Ware, 109),
where it is said (p. 115): "The seaman engages for the faith-
ful performance of the services, for which he contracted; the
master, on his part, engages to treat his men with humanity;
and this obligation of the master is not less imperative,
because masters do not think it necessary to insert any stipu-
lations in the contract, which may look like restrictions on
their part."

There are many other cases in admiralty holding a like
doctrine. (*The Minerva*, 1 Hagg Adm. 347; *Limland* v.
*Stephens*, 3 Esp. 269; *Edward* v. *Trevellick*, 4 Ellis &
B. 59; *Steele* v. *Thacher*, 1 Ware, 91; *Magee* v. *Ship Moss*,
Gilpin, 228; *Relf* v. *Ship Maria*, 1 Pet. Adm. 186; *The
America*, Blatchf. & H. Adm. 185.)

These decisions all proceed upon the ground that cruel
treatment by the shipmaster is a breach of the contract of
hiring on the part of the owners and relieves the seaman of
all further obligation to perform on his part.

In *Croucher* v. *Oakman* (3 Allen, 185), the Supreme Court
of Massachusetts held that in an action of contract by the
mate against the owners of the vessel to recover the damages
sustained from the unlawful act of the master in wounding
and discharging him in a foreign port, while in prosecution of
a voyage upon shipping articles signed by him, the plaintiff

may recover such damages as will compensate him for the injury sustained by him in consequence of the breach of the contract. BIGELOW, Ch. J., says (p. 187): "The principle upon which owners are liable in such cases is this: The defendants, as owners of the vessel, contracted with the plaintiff for the performing by him of the duties of mate for a specified voyage. It was their contract, although made in the name of the master. He was their agent to make and execute it. If it was broken by the wrongful act of their authorized agent, they are bound to make compensation to the party injured."

In *Hunt* v. *Colburn* (1 Sprague's Dec. 215), it was held that if a seaman is wrongfully left in a foreign port by the master, the owners are liable and the measure of damages is an indemnity for all that he has lost and suffered, including the value of his clothing detained by the master.

The underlying and controlling principle of all these cases is that the sailor is entitled to kind and humane treatment, and to protection from cruelty and acts of oppression on the part of his associates; that a stipulation of that kind is as much a part of the contract of hiring as that he shall have sufficient and suitable food and proper care, and medical attendance in case of sickness, and shall be cured at the expense of the ship owners, without any deduction for loss of services, and the various other provisions which the just spirit of the maritime law has imported into the contract for services in such cases and the observance of which has always been tenaciously insisted upon whenever these contracts have been the subject of judicial scrutiny.

The policy of the law in this respect had become so firmly fixed that it was held by Judge STORY, in *Harden* v. *Gorden* (2 Mason, 541), that an express written agreement on the part of the seamen to pay for medical advice and medicines was void, and it is intimated that no stipulation contrary to the provisions of the maritime law, to the injury of the seamen, will be allowed to stand, unless supported by an adequate additional compensation, the learned judge using the expres-

sion, so often quoted, that " they are emphatically the wards of the admiralty."

It does not follow that for injuries received while subjected to a mode of discipline, authorized by the maritime law, the seaman can maintain an action against the owners.

The authority of the master over the crew has been likened to that of a parent over his child, or a teacher over his pupils, or a master over his apprentice.  Like them, he must, in the first instance, necessarily be the judge to determine when resort shall be had to corrective measures.  The proper discipline of the vessel is indispensable to the successful prosecution of the voyage and is just as much a part of its navigation as the skillful direction of its course, or the careful management of its machinery or apparatus.  For an error of judgment in determining when punishment shall be inflicted, or in the selection of the means of chastisement, so long as it is one which is approved by the Maritime Code, or in the application of the means thus chosen, no recovery can be had. But the present case is destitute of any such feature.  It is conceded in the prevailing opinion that what the master did was not in the exercise of any disciplinary authority, but was an unprovoked, unjustifiable and brutal assault by him upon the plaintiff.   While acting as the representative of the defendants in the discharge of the duty which they owed to the plaintiff to protect him from ill treatment, and clothed with the absolute power to make his authority effective, he deliberately violated the agreement which they had made with the plaintiff.

The complaint alleges a cause of action of this character, for it sets out the contract of hiring, the cruel and inhuman treatment of the master, and the consequent damage to the plaintiff; and we cannot distinguish the case in principle from that of *Scarff* v. *Metcalf* (107 N. Y. 211), where it was held that in the performance of an obligation imposed by maritime law upon the owners of the vessel, the master stands as the agent and representative of the owners, and his negligence is theirs. It is but a statement in another form of the rule of liability

carefully preserved by this court in *Crispin* v. *Babbitt*, where it is declared that the exemption of the employer from responsibility to his servant for the wrongful acts of a co-servant, does not include claims for injuries which are the result of the act of the employer himself, or of a breach by him of some term, either express or implied, of the contract of service or of his duty to his injured servant.

The responsibility of the shipowners does not, therefore, end when they have manned the vessel with officers and a crew, who, they have every reason to believe, are competent and skillful, and supplied it with all the provisions and equipments which the maritime law or regulations may require.

They may have placed on board a supply of food abundant in quantity and unexceptional in quality, and yet if the master, without good cause, should refuse to allow a sailor to partake of it until starvation or exhaustion or other bodily injury resulted, it would not, we think, be contended that the owners were discharged from liability. The vessel may have a suitable medicine chest, and sufficient instructions for its use, and the master might unreasonably deny to a sick seaman the administration of the proper remedies, but the owners would be liable for the resulting injury. A master might compel a disabled sailor to do duty continuously without rest or sleep until overcome, and perhaps permanently injured by fatigue, and the act would be deemed to be that of the owners, as much so as if they had been personally present and directed it.

So we might go through the entire list of the shipowners' obligations to the sailor, and if he has been deprived of the benefit of any of them by the act of the master the owners must bear the responsibility. In such cases the motive with which an obligation is broken is not material.

We have been unable to find any reported case where a different measure of liability for a seaman's injuries has been applied.

There are numerous decisions holding that the shipowners are not liable for the negligent acts of the master or other

officers in the navigation of the ship, which involve no breach of the contract obligation or duties of the owners. *Benson* v. *Goodwin* (147 Mass. 237), and *The City of Alexandria* (17 Fed. Rep. 390), are typical of this class. In the former case the sailor was injured by the carelessness of the mate in allowing a part of the apparatus of the ship to fall upon him while they were attempting to weigh anchor under the orders of the captain, and in the latter case the cook fell through a hatchway which had been negligently left open by someone in the ship's employ, and of which the steward had failed to give him notice.

Such authorities have no relevancy or application to a case where, in consequence of the act, default or negligence of the shipmaster, the terms of the contract under which the seaman entered the service have been broken. In other words, the negligence of the shipmaster in doing an act pertaining to the navigation of the ship, and his negligence in performing the stipulations in the contract of his principals, or a duty imposed upon them by law, differ widely in their legal effect. It may well be that for the one the mariner has no remedy against his employer. It was a risk which he impliedly assumed when he entered the service. But for the other the shipowners have bound themselves to be responsible. If they entrust the discharge of their obligations to another they guarantee his fidelity, and his default becomes their default under the well settled rules of law establishing the liability of principals for the acts and omissions of their agents. Two decisions of the Supreme Court of Wisconsin have been referred to as embodying conflicting views upon the question here involved. (*Thompson* v. *Hermann*, 47 Wis. 602; *Mathews* v. *Case*, 61 id. 491.) But upon examination it will be found that they are in harmony and support the conclusion we have reached. They also very clearly illustrate the vital distinction which separates the cases where the owners must respond for the consequences of the negligent or wrongful conduct of the master from the cases where they are exempt from such liability. In the 47th Wis. the master

wantonly and recklessly exposed the sailor against his protest to an unnecessary danger, in consequence of which he was injured. It was a denial to the seaman of that measure of protection which, under the contract of service, he had a right to enjoy, and the owners were made liable.

In the 61st Wis. the master was at the wheel steering the vessel, and negligently or unskillfully steered it lengthwise into the trough of the sea, causing large quantities of water to flow over the deck, washing the yawl boat against the mate and severely injuring him. It was held that the cause of the injury was the negligence of a co-employe, for which the owners were not responsible.

The ill treatment of the plaintiff by the master was not successfully controverted upon the trial. A serious and permanent physical injury has been the result. The verdict was evidently not controlled by sympathy or prejudice, and the charge of the learned judge contained no error of which the defendants can justly complain.

The judgment should, therefore, be affirmed, with costs.

All concur with GRAY, J., except FINCH, O'BRIEN and MAYNARD, JJ., dissenting.

Judgment reversed. _____