### THE CITY OF MOBILE.

#### (District Court, S. D. Alabama. May 30, 1902.)

#### No. 963.

1. SEAMEN—RIGHT OF MASTER TO CHASTISE—ABANDONMENT OF VESSEL.

A master may inflict moderate chastisement on a member of his crew for disobedience of orders, and a single act of such kind, which does not exceed the bounds of moderation, will not justify the seaman in leaving the vessel before the expiration of his term of service, in the absence of threats of great bodily harm or some other reason to apprehend extreme danger to his personal safety if he remains.

In Admiralty. Suit for wages.

**Defendants' Modified Envelope.**

Smith & Gaynor, for libelant.
Pillans, Hanaw & Pillans, for respondent.

TOULMIN, District Judge. The libel alleges that the libelant was a "roustabout" or deck hand on the steamboat City of Mobile, and that the master of the boat assaulted and beat him, and threatened to tie and whip him, and to use his pistol on him, because a bale of cotton which he was ordered to put aboard the boat fell into the river without any fault on his part, and that in consequence of said treatment he was forced to flee for his life, and left the boat. This occurred at a landing on the Alabama river, on the down trip of the boat, and after libelant had worked five days. He sues to recover wages for the time he worked.

The respondent, answering, says that the libelant shipped on the boat at Mobile for a round trip to Montgomery; that he worked a few days, and during the voyage on the down trip he abandoned his services, left the boat, and did not return to it; that libelant, by his gross negligence or wantonness in handling the bale of cotton referred to, caused it to fall into the river and become damaged. Respondent denies that the master maltreated or hurt libelant, and says that libelant left the boat without justifiable or reasonable cause or excuse, and has thereby forfeited all right to wages.

There is an utter failure of proof of the allegation that the master threatened to tie and whip the libelant and to use his pistol on him. The libelant himself does not so testify. He says that the master told one of the crew to get a rope to tie him, and that the master struck him with his hand, and kicked him or attempted to kick him; but the evidence shows that no rope was brought, that the order to get it was given before the master struck libelant, and nothing more was afterwards said about it. The evidence also is that the master had no pistol, made no effort to get one, and said nothing about using one. It is shown, and admitted by the master, that he did catch hold of libelant and strike him once with his open hand; that the libelant then immediately left the boat; that he ran ashore and disappeared, and did not return to the boat. The evidence on the part of respondent is that the master, seeing the bale of cotton was in danger of falling into the river, several times ordered libelant and his co-worker, who were rolling the bale of cotton down the river bank, to catch it and stop it before it got into the river, and that libelant made no effort whatever to do so, but wholly neglected to obey the order of the master. The master testifies that the negligent and disobedient conduct of the libelant in reference to the bale of cotton was the cause of the punishment he inflicted on him. The evidence is that libelant had been a member of the crew of the boat for several trips before this one; that the master had at some time tied with a rope some members of the crew, but that libelant had never been tied; and the evidence for respondent further is that the master is an uncommonly humane and kind master.

It has been held by some courts that a "master has no right to punish a seaman for disobedience of orders or want of the proper

discharge of his duty after the acts had been done. He has no right to take the law in his own hands to punish a seaman for disobedience of orders that had passed by. Other remedies must be had." Spencer v. Kelley (C. C.) 32 Fed. 838; Padmore v. Piltz (D. C.) 44 Fed. 104. But the weight of authority is not in accordance with the ruling made in these cases. I think the weight of authority is that "the master may inflict moderate chastisement for disobedience or disobedient conduct. He may correct a negligent, disobedient seaman by corporal punishment, but it must be reasonable, to a reasonable extent, and in a decent manner, and not disproportionate to the offense." Desty, Shipp. & Adm. § 129; Bangs v. Little, 1 Ware, 506, Fed. Cas. No. 839; 20 Am. & Eng. Enc. Law (2d Ed.) 205. "In cases of disobedient conduct the master may lawfully correct the seaman in a moderate and reasonable manner, and this rule of temperance and moderation in punishment must necessarily depend on the particular circumstances of each case. The court will not undertake to adjust very exactly, according to its own ideas of fitness and propriety, the balance between the gravity of the offense and the quantum of punishment." 20 Am. & Eng. Enc. Law (2d Ed.) 205; Butler v. McCellan, 1 Ware, 219, Fed. Cas. No. 2,242. In U. S. v. Beyer (C. C.) 31 Fed. 35, the court said: "The master is justified in inflicting a moderate correction to the seaman for disobedience of orders, * * * although it would be far more dignified and decent in a master to refrain from attacking or inflicting personal chastisement upon seamen, where there is disobedience of orders, and no great emergency exists." I fully concur in the views expressed by the court in this case.

All the authorities, however, agree that to justify the seaman in leaving a vessel before the termination of a voyage on account of the cruelty of the master it must be apparent that he could not remain without extreme danger to his personal safety. Sherwood v. McIntosh, 1 Ware, 109, Fed. Cas. No. 12,778; The Alvena (D. C.) 22 Fed. 861. "Repeated acts of cruelty and oppression on the part of the master will justify a seaman in deserting the vessel, but not a single act of assault and battery, although it may exceed the bounds of moderation, unless there be reasonable grounds for apprehending that such acts of oppression will be repeated." Steele v. Thacher, 1 Ware, 91, Fed. Cas. No. 13,348; The Alvena, supra. "Repeated acts of cruelty by the master, if accompanied by threats of death or enormous bodily harm, will justify a seaman in leaving the service of the vessel before the voyage is ended. To justify his departure, it must appear that he could not remain without extra danger to his personal safety." Desty, Shipp. & Adm. § 185. While it is the duty of the master to treat the seaman with humanity, which duty on his part is not only a moral one, but is implied by the terms of his contract, and not to give himself up to a harsh and cruel temper, and beat the seaman with unreasonable severity, or punish him without cause, or with cause do so with wanton cruelty, the seaman engages for the faithful performance of the services for which he contracted, and it is his duty to obey all law-

ful orders of the master, to perform his services with diligence and fidelity, and not to leave the vessel until the expiration of the term of service for which he has contracted, unless the master is guilty of a gross abuse of his powers, and of the violation of the implied terms of his contract, which are equivalent to a discharge. Steele v. Thacher, supra; The Alvena, supra. There were no repeated acts of cruelty towards the libelant by the master in this case. There were no threats of any enormous bodily harm, and no reason, so far as the evidence shows, why the libelant could not have remained on the boat without extra danger to his personal safety.

My opinion is that the libelant was not justified in leaving the boat before the voyage ended. His leaving the boat without justification operates as a forfeiture of his wages. The libel must therefore be dismissed; and it is so ordered.