SPENCER *v.* KELLEY and another.

(*Circuit Court, N. D. Ohio, E. D.* February Term, 1887.)

1. ASSAULT AND BATTERY—BY MASTER OF VESSEL—LIABILITY OF OWNER.
    In a suit by a seaman against the owner of a vessel, for injuries from assault committed by the master, in order to make the owner liable, it must be shown that, in the infliction of the injury complained of, the master was acting within the scope of his duty, and in the exercise of his control over the plaintiff.

2. SAME.
    Where a master of a vessel assaulted a seaman for an act of disobedience, after the emergency had passed, and the act had been done, *held,* that the master was not in the line of his duty, and the owner of the vessel would not be liable to the seaman for any injury he may have received.

3. SAME—BY CAPTAIN—DISOBEDIENCE OF ORDERS.
    In a suit for damages by a seaman against the owner of a vessel for injuries inflicted by the captain, where the seaman was in the wheel-house and refused to leave on the order of the captain, or refused to change the wheel at his order, or resisted him when trying to change it, *held,* that the master had the right to use such force as was necessary to remove him from the pilot-house, or to put the wheel in proper position; but that if he used more force than was reasonably necessary, or unnecessarily injured the plaintiff, the owner was liable.

4. SAME.
    If the seaman was rightfully in the wheel-house and had not disobeyed orders or resisted the captain, then the latter had no right to assault him.

In October, 1886, the plaintiff, Edward Spencer, shipped on board a vessel called the J. H. Prentiss as a seaman, on board of which vessel, as the master of it, was Captain Gaines. The defendants, John Kelley and D. B. Sanborn, (Kelley alone being served; Sanborn not in court,) were at the time the owners of the vessel. The vessel started from the harbor of Lorain on the evening of the twenty-seventh of October, and the plaintiff says that in the lake, shortly after getting out of the harbor, the master of the vessel, Captain Gaines, brutally, unnecessarily, and improperly assaulted and beat him by striking him repeatedly on the face and on the head, and throwing him down, and bruising and cutting him on the head and face, whereby plaintiff was made senseless, and thereby greatly injured.

*F. J. & G. C. Wing,* for plaintiff.

*H. D. Goulder* and *Andrew Squire,* for defendant.

WELKER, J., (*among other things, charged the jury:*) The relations of the seaman, the plaintiff, and the master have something to do with the rights and duties of each of these parties. The defendant was engaged in the maritime business on the lakes. He had to use his vessel through the instrumentality of agents, and, as the commander in chief of his vessel, he employed Captain Gaines, and all of the other employes on board of the vessel were the employes of the defendant as well as Captain Gaines, but they were under the control, direction, and command of the master of the vessel. If this injury had been done by the carelessness of the co-

laborer of this plaintiff, working in the same capacity as plaintiff was, the owner of the vessel would not be liable; but for any negligence, or carelessness, or injury inflicted upon subordinates by the master of a vessel who had the right to control it, the owner of the vessel would be responsible.

You will readily see that in the exercise of the business of transportation on the lakes in vessels, there must be some one who is in supreme command of the vessel. It will not do to divide up the responsibility. The master necessarily has the control of all of the other employes, and it necessarily follows that all of the subordinates are bound to obey the orders and directions of the master in charge of the vessel. He is to be held responsible to the owner for the safety of the property intrusted to him; he is to be held responsible for the security of the property in his charge for transportation; he is responsible, also, for the lives and the health of the persons who may be employed on board of his vessel; and this responsibility being upon the master, it necessarily follows that he must have the control and direction of his subordinates in the performance of duty.

It seems in this case that the plaintiff was shipped as a wheelsman, and that when starting from Lorain he was put in charge, with somebody else, of the wheel, and, after they got out of the harbor at Lorain, steering down the lake, the plaintiff was in the pilot-house or the wheel-house at the time when it is said this occurrence took place. What was done there, what the plaintiff was doing at the time, and what he had done, are questions of fact that you must find out as well as you can. In the next place, what the master of the vessel did on that occasion you are to settle and determine in the light of the proof. And when you have carefully considered all of the evidence and found out exactly how this thing occurred, and what was done by not only the plaintiff, but by the master of the vessel, you will be prepared, then, to apply some general principles of the law, which it is the duty of the court to give you that you may be enabled to determine correctly how the case ought to be decided.

This assault, as it is claimed, took place partly in the pilot-house or wheel-house and partly on deck. What was done in the pilot-house and what was done outside are questions that you must determine from the evidence before you. This defendant, personally, had nothing to do with this transaction, but he is liable for some of the acts of his master on board of the vessel. He is not liable for every act that the master may do on board of his vessel; but I direct you that, to make the defendant liable for the conduct of the master of his vessel, it must be shown that in the infliction of the injury complained of in this case the master was acting within the scope of his duty as such master, and in the exercise of his control over plaintiff on that occasion. If, in the discharge of his duty, or in the exercise of this control over his subordinate, he inflicted the injury complained of, the defendant would be liable, for that class of injuries, to a recovery in this behalf by the plaintiff for damages sustained thereby.

There is another principle: If the plaintiff was wrongfully in the pilot-house and at the wheel, the master had a right to order him away from the wheel, and out of the wheel-house, and if he refused to go out or to leave the wheel, or resisted, he had a right to use such force as might be reasonably necessary to remove him from the pilot-house and prevent him from interfering with the wheel; but if the plaintiff was rightfully in the wheel-house or pilot-house, and did improperly put the wheel in a wrong position so as to endanger the safety of the vessel, it was the duty of the master to direct him to change it, and, if he neglected or refused to do so, the master had the right, and it was his duty, to change it himself, and if the emergency was great, without waiting to direct any other person to do it; and, if the plaintiff resisted the master in so changing the wheel, the master had a right to use such force and means as might be necessary to enable him to put the wheel in its proper position.   If he used more force than was reasonably necessary for that purpose and unnecessarily injured the plaintiff, the defendant would be liable for such injury.

In the next place, in ascertaining the amount of force that was necessary, if this plaintiff was improperly doing what it is claimed on the part of the defense he was doing, in the excitement of the occasion and emergencies, you cannot very nicely and minutely measure the amount of force used by a party, whether it is necessary or not at the time; but you must judge, as best you can from the emergency of the situation in which the parties were at the time, the amount of force necessary to be used for the purpose of carrying out the orders of the captain.   If, on the other hand, this plaintiff was rightfully in the wheel-house, and had not disobeyed any of the orders, had not resisted or neglected his duty, then the master of the vessel had no right to make an assault upon him.

In the next place the master had no right to punish the plaintiff for disobedience of orders or want of the proper discharge of his duty after the acts had been done.   He has no right to take the law in his own hands to punish a party for the disobedience of orders that had passed by.   Other remedies must be had.   But, if the master did so after the emergency had passed, he was not doing it in the line of his duty, and the defendant would not be responsible for that injury, however responsible and liable the master himself might be.   If the acts complained of were done by the master after the necessity to change the wheel, or get him out of the wheel-house had passed, the defendant would not be liable for it, for the reason that it would not be in the scope of the master's duties and in the performance of such duty of the master.

One thing must be considered in reference to this assault, and that is whether the two were connected together so as to be but one assault and battery; part of it may have occurred after he passed out of the pilot-house, but if connected together, then it might be regarded as the same assault and battery as that commenced in the pilot-house, and you cannot very well nicely distinguish the exact time when the first ended and the second commenced.   But, if time enough elapsed between the two so as to show that the assault that was made outside on the deck was

made by way of punishment on the part of the master for disobedience occurring before and when there was no necessity for it, I direct you in that respect that, although the master would be liable, yet the owner of the vessel would not be liable for such action and this injury.

Verdict for the defendant.