GABRIELSON v. WAYDELL et al.

(Circuit Court, E. D. New York. April 26, 1895.)

1. RES JUDICATA—JUDGMENT ON DEFAULT.
     Plaintiff recovered a judgment, in a state court, against defendant, which was reversed on appeal, and a judgment by default afterwards

entered by defendant, for costs. *Held*, that such judgment was not a bar to a new action by plaintiff, for the same cause, in the federal court.

2. SHIPPING—RESPONSIBILITY OF OWNERS FOR MASTER'S ACTS.
The master of a vessel, though in a sense an officer of the law for maintaining discipline, derives all his authority as such from his appointment by the owners, whom he represents as to everything about the crew, and such owners are responsible for failure of the master to give a seaman proper care and cure in sickness, or for his violent maltreatment of a seaman while sick.

3. SAME—GROUND OF LIABILITY—STATUTE OF LIMITATIONS.
An action for damages for violent maltreatment of a seaman by the master is based rather upon breach of the duty of good treatment and care than upon violation of the person, and a statute limiting the time for bringing actions for assault and battery does not apply.

This was an action by Charles G. Gabrielson against Frederic Waydell and others, owners of the bark Rebecca Caruana, to recover damages for injuries done to the plaintiff by the master of the bark. A verdict was rendered for the plaintiff. Defendants moved in arrest of judgment.

George P. Gordel, for plaintiff.
Robert D. Benedict, for defendants.

WHEELER, District Judge. The principal question in this case is whether the defendants, as owners of the bark Rebecca Caruana, are liable to the plaintiff, a seaman, for injuries violently done to him when sick, by the master, on the high seas. The plaintiff brought suit in the courts of the state for the same injuries, and a judgment in his favor was reversed by the court of appeals as not maintainable against the defendants. Gabrielson v. Waydell, 135 N. Y. 1, 31 N. E. 969. A judgment on default was afterwards taken by the defendants in the court below for their costs. That judgment is set up and relied upon here as a bar to this suit, or a conclusive authority against it, with the statute of limitations of the state. That the judgment is not a conclusive bar is clear, for it was for costs only on default, and not upon the merits. Not being conclusive as a bar, as the cause of action did not accrue within the state, it can be nothing more than an authority of a high court entitled to great respect. As such it was based upon conclusions reached by a bare majority against a strong dissent, and in express repudiation of principles relating to agency and service held in somewhat analogous cases by the supreme court of the United States, which this court is, of course, bound to follow. Railway Co. v. Ross, 112 U. S. 377, 5 Sup. Ct. 184. By the statutes of this state, actions for assault and battery are limited to two years. Code, § 384. That such statute applies to the courts of the United States sitting in the state seems to be well settled. Metcalf v. City of Watertown, 153 U. S. 671, 14 Sup. Ct. 947; Campbell v. Haverhill, 155 U. S. 610, 15 Sup. Ct. 217. So, if this was such an action, as it was not brought within two years, that statute would seem to be a bar. But the action may be considered as, and recovery has been had, rather for breach of duty of good treatment and care than for violation of the person, and as such it does not seem to be barred.

That the master of a ship at sea is agent for the owners as to everything about the crew, or that the seamen are entitled to care and cure in sickness from disease or injury, at their expense, within reasonable bounds, is not disputed or disputable. Harden v. Gordon, 2 Mason, 541, Fed. Cas. No. 6,047; Peterson v. The Chandos, 4 Fed. 645; Desty, Adm. § 154. What was to be done for the plaintiff in this behalf must be done by the captain, as the agent of the defendants, in command of their ship for them. If in any case an agent could represent the principal about the treatment of a servant, a shipmaster would seem to represent the owners about the treatment of a seaman. In Croucher v. Oakman, 3 Allen, 185, the owners were held liable to the mate for the consequential damages from shooting by the master. In The A. Heaton, before Mr. Justice Gray and Judge Colt in the circuit court for the district of Massachusetts, 43 Fed. 592, the schooner was held liable to a seaman for the negligence of the captain about the rigging, against an argument for the owners that they were not liable for the acts of the captain. In the opinion by Mr. Justice Gray, the authorities, including the cases afterwards disregarded by the court of appeals, as before mentioned, were thoroughly reviewed; and the principles of the latter, as well as of the others, were applied. To wrongfully make a seaman sick, or sicker, would seem to be as much of a breach of the duty to cure as wrongful neglect to cure existing sickness would be.

But the counsel for the defendants insists in argument that shipmasters are, beyond being the agents of the owners, officers of the law for maintaining discipline and securing safety, and that the personal treatment of the seamen by the master on board is done in his office, and not in his agency. Many authorities, ancient and modern,—rather more of the former than of the latter,—are cited to show this official character of the master; and also that his conduct towards the seamen has always been regarded as within his office by the absence of any statement of liability of the owners on account of his agency for it. Cleirac, 8; Molloy, 322; Pardessus, 81; 1 Boul. P. Dr. Com. 383; Abb. Shipp. 163; 2 Pars. Shipp. 391; 1 Mande & P. Shipp. 127; MacL. Shipp. 121. Sunday v. Gordon, 1 Blatchf. & H. 574, Fed. Cas. No. 13,616, which was brought against the owners, and in which they were held not to be liable, for damages for wrongfully bringing the plaintiff off from the coast of Africa, and for wages afterwards, is cited as being nearest to this. In it Betts, J., said:

"If the libelant was tortiously brought off from Africa, that was exclusively the act of the deceased master. There is no evidence that he was authorized to obtain by hiring, force, or stratagem negroes on the coast, for the purpose of bringing them to this country, or that the owner afterwards approved of the act; and the owner accordingly would not be chargeable for any act of trespass, false imprisonment, or kidnapping perpetrated by the master."

This act of the master, from which the owners were so exonerated, was begun wholly outside of the ship, and was perpetrated upon one not connected with the ship, but who was wholly outside of the business of the ship, and of the master's agency or

office. The remarks quoted seem to imply, rather than to deny, that the owners might be liable for similar wrongs done by the master to those within the scope of his authority. While the master is in some sense an officer, and is often referred to as such in authorities and cases of the sea, he is appointed to his place solely by the owners, and what is called his official capacity seems to be only the large scope of authority going with the appointment from the policy and necessities of the case. By whatever name the authority of the master may be known, it appears to come from the owners. That cases were not brought by seamen for acts done under this authority shows the understanding of the profession, which is of great weight, but does not show what would have been done with them if they had been brought. Actions upon the liability of principals for acts done by agents placed over others are of comparatively modern origin, although the principles underlying them are fundamental; and these principles may have slept, for want of being brought into application, as well in this class of cases as in others. Motion overruled, and let judgment be entered on the verdict.