THE ASTRAL.

(District Court, E. D. Pennsylvania. February 16, 1905.)

No. 58.

SEAMEN—ABUSE BY SUBORDINATE OFFICERS—LIABILITY OF VESSEL IN DAMAGES.
    A ship is not liable to a seaman in damages because of personal injuries sustained through the failure of the master to maintain proper discipline and to protect the libelant from abuse at the hands of subordinate officers.

    [Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Seamen, §§ 195–203.]

In Admiralty. Suit in rem by seaman to recover damages for personal injuries.

Joseph Hill Brinton, for libelant.
Henry R. Edmunds, for respondent.

J. B. McPHERSON, District Judge. The libelant was a seaman on board the bark Astral during a voyage from Honolulu to Philadelphia, and has proceeded in rem against the ship to recover damages for injuries suffered by reason of the master's neglect of duty. The cause of action is thus set forth in the libel:

"That during the said voyage, on or about the 5th day of May, A. D. 1904, at about 7:30 o'clock a. m., when the vessel was about ten days out from Honolulu, the libelant was on deck performing his duties, and was approached by Charles Rock, first officer, and was accused by him of being impertinent, and without further cause or provocation was violently kicked in the stomach by the said officer, causing him great pain and suffering. The libelant there-

upon went to the said master, and protested against the treatment of the said mate, and requested the master's interference in his (the libelant's) behalf, and further requested that the master log the mate as evidence of the said unjustifiable assault. All of this the captain refused to do, but, on the contrary, and before the libelant had finished his complaint, the mate approached the libelant, and in the presence of the captain threatened the libelant with grevious bodily harm it he did not go forward at once.

"That later, on or about the 25th day of July, A. D. 1904, while the said vessel was off the Brazilian coast, at about 8 o'clock in the evening, the said first officer directed the libelant to repair to the poop deck, and, as a punishment, walk up and down the bridge during the night watches during the remainder of the voyage. The libelant thereupon requested to know why he should comply with such an unusual order. The first officer gave no response, but without further cause or provocation violently struck the libelant in the face with his fist, knocking him against the railing of the bridge, inflicting severe pain and suffering, and in a most violent manner continued his assault upon the libelant. During said assault the master of the said vessel was watching the assault from the chart room, and failed to interfere on behalf of the libelant. When requested so to do, and to again enter the facts of the assault in the log book, he refused to do so, but encouraged the mate in his unlawful assaults.

"That the libelant during the entire voyage, or the greater part thereof, was continuously threatened by the said first officer with violent assaults, of which the said master had knowledge, but he failed to suppress."

Assuming these averments of fact to be established by the evidence, the important question arises whether an action against the ship can be maintained for the master's breach of duty. That an action in personam would lie against the mate and also against the master cannot be denied, but this does not answer the question just stated. An action in rem for a similar neglect of duty was sustained in The Marion Chilcott (D. C.) 95 Fed. 688, and The Lizzie Burrill (D. C.) 115 Fed. 1015; but these cases were both decided before the appearance of The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760, and must, of course, give way to the ruling of the Supreme Court. After an elaborate consideration of the cases upon the subject of a seaman's rights if he falls sick or is injured in the service of the vessel, Mr. Justice Brown announced the court's conclusions in this language:

"Upon a full review, however, of English and American authorities upon these questions, we think the law may be considered as settled upon the following propositions:

"1. That the vessel and her owners are liable, in case a seaman falls sick or is wounded in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued.

"2. That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship. Scarff v. Metcalf, 107 N. Y. 211, 13 N. E. 796, 1 Am. St. Rep. 807.

"3. That all the members of the crew, except, perhaps, the master, are, as between themselves, fellow servants, and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure.

"4. That the seaman is not allowed to recover an indemnity for the negligence of the master or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident."

Since the injuries received by the libelant were sustained in consequence of the master's neglect of duty, the question of the ship's liability seems to be answered by paragraph 4 from the opinion of the

Supreme Court. I am unable to draw a tenable distinction between the master's fault in giving a wrong order—which was the negligence complained of in The Osceola—and his fault in failing to maintain proper discipline on the ship and to protect members of the crew from abuse at the hands of subordinate officers. Neglect of duty is negligence, and for negligence on the part of the master it has now been authoritatively decided that the ship and her owners are not liable in an action of this kind.

The libel must be dismissed.