THE SALLIE ION.

(District Court, E. D. Pennsylvania. May 17, 1907.)

No. 42 of 1906.

ADMIRALTY—REMEDIES IN REM—TORTS—ASSAULT BY MASTER.

Under admiralty rule 16, providing that in all suits for an assault or beating on the high seas, or elsewhere within the admiralty and maritime jurisdiction, the suit shall be in personam only, a libel against a vessel will not lie for an unprovoked assault committed by the master on a seaman upon the vessel.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, § 284.

Jurisdiction of torts, see note to Campbell v. H. Hackfeld & Co., 62 C. C. A. 279.]

In Admiralty. Exceptions to libel.

Joseph Hill Brinton, for libelant.
Edward F. Pugh, for respondent.

J. B. McPHERSON, District Judge. This action in rem against the schooner Sallie Ion seeks to recover damages for an assault committed by the master upon a member of the crew under circumstances that are thus set forth in the libel:

"That the said schooner Sallie Ion, while lying in the port of Baltimore, Md., on August 7, 1906, shipped and hired the libelant to serve as able seaman on

said vessel for a voyage to Jacksonville, Fla., and back to Philadelphia, the port of discharge, for the right of wages of thirty dollars per month. That the libelant went on board and entered into the service of said schooner and performed his duties until October 13, 1906, when he was discharged at the port of Philadelphia, Pa.

"That on or about September 21, 1906, whilst the vessel was lying in the port of Jacksonville, Fla., the libelant being informed that the master had logged him for going ashore, at about noon went to the master's cabin for the purpose of ascertaining the truth of this report. The libelant was informed by the master that he had been logged, whereupon the libelant called him a hypocrite. Without further provocation of any character whatsoever, and without warning, the master drew a revolver and fired upon the libelant; the ball passing through his left leg above the knee, causing the libelant great pain and suffering and permanent disability. The libelant avers that he did not by word or act in any manner threaten to harm the master, and that the attack was without provocation. As a result of the wound the libelant was sent to the Marine Hospital at Jacksonville, Fla., where he remained undergoing treatment for a period of about twelve days."

To this libel the vessel has excepted on the ground, inter alia, that an action in rem will not lie for such an assault, and in my opinion the position of the ship is well taken, being supported by the express provision of section 16 of the admiralty rules laid down by the Supreme Court. The rule is as follows:

"In all suits for an assault or beating on the high seas, or elsewhere within the admiralty and maritime jurisdiction, the suit shall be in personam only."

The plain and natural meaning of this language covers such a case as is now before the court, and I am unable to see upon what ground a construction can be fairly rested that will in effect disregard the prohibition of the rule, and permit a suit in rem to be brought against a vessel for an assault by the master upon a member of the crew. It is true that several cases in the lower courts are to be found that have allowed a recovery in rem for the negligence of the master, but all of them were decided before the publication of the decision in The Osceola (1903) 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760, and, so far as they are in conflict therewith, must of course be regarded as overruled.

One of the conclusions announced in The Osceola was this:

"(4) That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and care, whether the injuries were received by negligence or accident."

This conclusion was recently followed in this district: The Astral (D. C.) 134 Fed. 1017. Now, surely, if an action in rem will not lie to redress an injury caused by the negligence of the master, still less will such an action be permitted, where the wrong of the master has been wanton and malicious, an act not even connected with the performance of his duty in the care and management of the ship. In The Osceola, the master was engaged in the business of navigating the vessel, and negligently gave a wrong order. Here, he was not employed in any branch of his duty, but committed the assault on the libelant without provocation or just cause—in other words, wantonly and maliciously. At least in the absence of proof that the master was known to be of violent temper and given to such dangerous outbreaks —and perhaps not even then—there is no reason why the ship should be liable for conduct of this kind, and rule 16 is probably founded on

the injustice of making the vessel suffer for a criminal act that is only connected with the ship because it has been committed upon her deck by one of her officers. But, whatever the reason for the rule may be, I am unable to limit its apparent scope, and must therefore hold that it embraces the case of an assault by the master upon a member of the crew.

The cases cited upon the brief of libelant's counsel are to the following effect: The City of Alexandria (D. C. 1883) 17 Fed. 390, decided that the cook of a vessel who was injured by the negligence of its officers, was entitled to medical care, nursing, attendance, and cure, so far as cure was possible, at the expense of the ship, and to wages to the end of the voyage; and that, having received such treatment and wages, he could not hold the ship liable for the negligence of its officers. Whitney v. Olsen (1901) 108 Fed. 292, 47 C. C. A. 331, was apparently an action in personam against the master and owners of a schooner, in which they were held liable for failure to put into the nearest available port, in order that the libelant, an injured mate, might receive proper care and treatment; but, even if the action was in rem, the case is evidently not in point. In The Eva B. Hall (D. C. 1902) 114 Fed. 755, a seaman, whose arm had been broken by a blow, struck by the mate with a capstan bar, was compelled by the master to continue at work; and it was held that, although the vessel could not be held for the blow, she was liable for the master's misconduct in compelling the libelant to work, instead of seeing that he had the necessary rest and care. In Sherwood v. Hall (1837) Fed. Cas. No. 12,777, Mr. Justice Story held the owners of a vessel liable in an action in personam for the tort of the master in shipping a minor with notice that the shipment was unauthorized by, and against the will of, the father. The case of The A. Heaton, 43 Fed. 593, was decided by Mr. Justice Gray in 1890, and holds, in conflict with The Osceola, that a seaman, who had been permanently injured by "the master's gross, not to say reckless, neglect of the duty which he owed to the crew under his command and care," might recover damages from the ship, over and above his wages and the expenses of his cure. The Marion Chilcott (D. C. 1899) 95 Fed. 688, holds that, while rule 16 protects the ship from liability in damages for assaults committed by the officers, she is liable for injury inflicted on a seaman by reason of the master's neglect to protect him from continued abusive treatment by a subordinate officer. To the same effect is The Lizzie Burrill (D. C. 1902) 115 Fed. 1015. The case of Gabrielson v. Waydell (C. C. 1895) 67 Fed. 342, was an action at law against the owners, in which a verdict for the plaintiff was sustained; the suit being brought to recover damages for violent injury inflicted by the master, while the vessel was on the high seas. And in Spencer v. Kelley (C. C. 1887) 32 Fed. 838, the action was also at law against the owner, on the ground that the master had assaulted the plaintiff; and it was held that it must be shown that the master was acting within the scope of his duty, and in the exercise of his control over the plaintiff. It is evident, I think, that these decisions do not modify The Osceola—even if they were competent so to do—and therefore, upon the whole case, I am of opinion that the libel must be dismissed for want of jurisdiction.

A decree to that effect may be entered.