### W. B. FLEMING v. TARBORO KNITTING MILLS.

(Filed 5 March, 1913.)

1. **Master and Servant—Assault Upon Servant by Superior—Scope of Employment — Damages — Respondeat Superior — Evidence Conflicting—Questions for Jury.**

    Where damages are sought of the master for personal injuries inflicted by the servant, and the evidence is conflicting as to whether the act complained of comes within the scope of the servant's employment or was done in the service of the employer, so that more than one inference may be drawn from it, the question of the master's liability is one for the determination of the jury.

2. **Master and Servant—Assault Upon Servant by Superior—Scope of Employment—Test—Respondeat Superior.**

    Where damages are sought of the master for injuries inflicted on a servant by an assault of his foreman, the question is, not solely whether the superior servant was on duty at the time of the assault, but whether the act was done in the prosecution and furtherance of the master's business.

3. **Same—Evidence Conflicting—Questions for Jury.**

    Where it is shown that the master's foreman went to an employee whose duty it was to run a number of knitting machines, and, acting for the master, complained of the manner in which the machines were being run, and the evidence is conflicting as to whether the employee, unprovoked, assaulted the foreman in consequence of what he said, or whether the foreman, to enforce obedience, assaulted the employee without provocation, the question of the master's liability for an injury therein inflicted on his servant is one for the determination of the jury. In this case the charge of the court is approved.

APPEAL from *Cline, J.,* at September Term, 1912, of PITT.

Civil action for damages for personal injury. These issues were submitted:

1. Was the plaintiff unlawfully and wrongfully assaulted by the defendant John Mobley, as alleged in the complaint? Answer: Yes.

2. If so, was the defendant Mobley at the time acting within the scope of his employment as foreman of the knitting-room of the defendant, the Tarboro Knitting Mills? Answer: Yes.

3. What damage, if any, is the plaintiff entitled to recover? Answer: Three thousand dollars.

The defendant knitting mills appealed.

*Albion Dunn and Harry Skinner for plaintiff.*

*John L. Bridgers and G. M. T. Fountain & Son for defendant.*

BROWN, J.   There is abundant evidence that the defendant Mobley violently and wrongfully assaulted the plaintiff and to justify the finding of the jury on the first issue.

The only question presented by this appeal and discussed on the argument is the liability of the knitting mills for Mobley's act, and that was submitted to the jury under the second issue.

Where the facts are admitted, or there is no conflicting evidence, and only one inference can be drawn, it is for the court to determine whether the act of a servant comes within the scope of his employment or was done in the service of his employer.

But where the facts are not admitted, and the evidence is conflicting, as in this case, the determination of the question is properly left to the jury. *Daniels v. R. R.,* 117 N. C., 592; Wood on Master and Servant, 594; *Hussey v. R. R.,* 98 N. C., 34.

The test is, not whether Mobley was on duty at the time he assaulted plaintiff, but, Was the act done in the prosecution and furtherance of the defendant's business? *Roberts v. R. R.,* 143 N. C., 179; *Daniels v. R. R.,* 136 N. C., 527; *Doves v. Manufacturing Co.,* 157 N. C., 324.

The motion to nonsuit brings up for review the sufficiency of the evidence upon the second issue.

The record shows that the plaintiff had been in the employment of the defendant knitting mills since February, 1909, and

his duties were to run eighteen knitting ribbing machines on the floor which was in charge of the defendant John Mobley, foreman. Mobley, foreman, had the authority to hire and discharge hands, and the immediate direction of the operation of all the machines on said floor. It is admitted by Mobley that one Campbell, another employee, came to him and told him that plaintiff would not start up his machines; that he had broken off the needles.

Mobley testified: "After that, Mr. Clark came to me and told me he would not start the machines, and had left the machines and was throwing tops in the rack. I went to him and asked him why he didn't start it up. He said he was keeping it running. I said, 'It doesn't seem so; it has been shut down for about three-quarters of an hour.' He said, 'If you say so, you are a damn liar.' I expected him to hit me, and I struck him in the face. We were both standing by the tank. He struck at me, and I dodged, and I struck him again, and we clinched and fell on the floor, and he choked me on the floor."

There seems to be no difference in the evidence until Mobley accosted plaintiff about his work. As to what then occurred the plaintiff testifies: "I stopped to count up my work to see how many dozen I had made. I went around to the bin and counted up my work. He came around. I was looking over and counting. He said, 'What is the matter? Don't you want to run these machines?' I had eighteen machines to work. I said, 'I reckon so; I have run them.' He said, 'You haven't half run them.' I said said, 'I have done the best I can.' He said, 'If you don't want to run them, I wouldn't do it.' I said, 'Just as you say; I will quit now; I have only two or three weeks more, and I will quit now.' He laughed and said he didn't want me to quit. I said, 'If you want to talk, just wait a few minutes.' At that time I stooped down to get another bundle of tops, and as I did he struck me with a monkey-wrench and hit me across the head, the back part, and struck me on the jaw. I threw up my head and it glanced. I had to save my head, and as I stepped back I lost myself and wrenched my ankle; then I caught myself from falling. I didn't know my leg was broke."

We think from Mobley's own evidence that he went to see plaintiff in consequence of what Clark had told him and to remonstrate with plaintiff about his work and to compel plaintiff to start up the machines. In doing so he was acting for the defendant and in prosecution and furtherance of defendant's business. If while so doing he violently assaulted plaintiff with the monkey-wrench, as testified to by plaintiff, the defendant would be responsible for his act.

This question was properly presented to the jury under very clear and appropriate instructions as follows:

"The master is not responsible for wrongs done by the servant while not acting within the scope of his employment. If the servant steps aside from his master's business, for however short a time, to commit a wrong not connected with such business, the relation of master and servant will be deemed to have been for the time suspended. The test is not whether it was done during the existence of the employment, *i. e.*, during the time covered by the employment, but whether it was done in the prosecution of the master's business. It is obviously a question of fact for the determination of a jury whether at the time of the particular act or omission by the servant which caused the injury the servant was acting within the scope of his employment or acting outside of it to effect some purpose of his own. The master is not responsible for wrongs committed by the servant while not acting about the master's business, or, what is substantially the same thing, while not acting within the scope of his employment. So the question is one for you to determine, whether at the time of the alleged assault the defendant Mobley was acting within the scope of his employment or authority, or was he in fact performing his master's business, or engaged in some pursuit of his own."

This instruction is in accord with our precedents. *Jackson v. Telegraph Co.,* 139 N. C., 353; *Hussey v. R. R.,* 98 N. C., 34; *Daniel v. R. R.,* 136 N. C., 523; *Dove v. Manufacturing Co.,* 157 N. C., 328; *Bucken v. R. R.,* 157 N. C., 446; *May v. Telegraph Co.,* 157 N. C., 416; *Roberts v. R. R.,* 143 N. C., 179.

FLEMING *v.* KNITTING MILLS.

This last case is reported in 8 L. R. A., N. S. There is a very instructive note by the editor, which bears directly upon this controversy which we regard of such value as to justify quoting it at length. The editor says:

"There can be no doubt of the correctness of the decision in *Roberts v. Southern Railway Co.* on the facts of that case, since the assault took place after the occasion for correction or discipline had passed, and was clearly malicious and entirely disconnected from the master's business. But a more difficult question arises where the assault takes place at the very moment when the occasion for correction or discipline arises, and the servant inflicting it is, at the time, engaged in discharging the duties of his employment. No fixed rule as to this phase of the question can be formulated from the decisions, since they are in irreconcilable conflict. But, on principle, it would seem that if an assault is committed on an inferior servant by a superior while the latter is engaged in doing the very thing he is employed to do—that is, in supervising and directing the work—the master should be liable therefor. When an employer delegates to a servant authority to supervise the work and conduct of others, and to order and direct them in performing the work, it would seem that such servant, in issuing commands, and in attempting to enforce them, acts as the *alter ego* of the master, and that the latter must be held responsible for all acts of the supervising employee in compelling obedience to his orders for which the master would be responsible if they were done by himself."

The judgment of the Superior Court is

Affirmed.