## THE WHISPER.

### WOLFE v. THOMAS.

(Circuit Court of Appeals, Sixth Circuit. November 12, 1920.)

No. 3393.

1. **Admiralty ⬦60—Libel held to allege assault on steamboat showing admiralty jurisdiction.**

   A libel, alleging that a steamboat plying on the Mississippi river was discharging freight consigned to a certain landing when libelant was assaulted, and that after the assault libelant was compelled to leave the steamboat, *held* sufficient to aver that the assault was committed while the boat was on the navigable waters of the Mississippi river and while libelant was on the boat, so that a court of admiralty had jurisdiction.

2. **Admiralty ⬦60—Jurisdictional·facts need not be alleged with technical accuracy.**

   While the libel must expressly state the facts on which admiralty jurisdiction depends, it is not necessary that those facts should be stated in such clear and positive language as to defy technical or hypercritical attack; but it is sufficient if the language conveys the idea to be expressed thereby to men of average intelligence, and especially to those engaged in the particular art, profession, craft, or business.

3. **Evidence ⬦129 (5)—Of subsequent separate assault on shore not admissible.**

   On a libel in admiralty for an assault and battery by the master of the steamboat on a seaman, evidence that some appreciable time after the assault on the boat the master again assaulted the seaman while they were on shore, and inflicted injuries much more serious than those previously inflicted, is inadmissible, as tending to establish a separate assault, over which the court of admiralty had no jurisdiction.

4. **Admiralty ⬦20—Action for assault on boat within jurisdiction, though main injuries resulted from subsequent shore assault.**

   Where the master of a steamboat first assaulted a seaman while on the boat, and thereafter made a second assault after they were on shore, a court of admiralty can award damages which the libelant shows resulted from the first assault, although the principal injuries were sustained in the second assault.

Appeal from the District Court of the United States for the Western Division of the Western District of Tennessee; John E. McCall, Judge.

Libel in personam by Henry Thomas against James E. Wolfe, owner of the steamer Whisper. Decree for libelant, and respondent appeals. Reversed and remanded.

H. N. Moon, of Memphis, Tenn., for appellant.

Dan F. Elliotte, of Memphis, Tenn., for appellee.

Before KNAPPEN and DONAHUE, Circuit Judges, and COCHRAN, District Judge.

DONAHUE, Circuit Judge. On the 14th day of July, 1919, Henry Thomas filed a libel in personam in the District Court of the United

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

States for the Western District of Tennessee, Western Division, against James E. Wolfe, averring, among other things, that the respondent was the owner of a steamboat, registered under the name of Whisper, which steamboat was engaged in interstate commerce as a common carrier of freight and passengers for hire on the Mississippi river, between the city of Memphis, Tenn., and other points on that river in the states of Arkansas and Missouri, and that such steamboat was therefore under all obligations imposed by the admiralty laws of the United States of America; that John Lynch, at the time of the commission of the grievances stated in the libel, was "master of said steamboat"; that this libelant was a seaman thereon employed at the port of Memphis, Tenn., on the 8th day of July, 1919, for a trip from Memphis, Tenn., to Osceola, Ark., and return, at the rate of $90 per month; that on the 9th day of July, 1919, while this steamboat was discharging freight consigned to Upper Turnages Landing, in Arkansas, and while libelant was performing the duties assigned to him as a mariner, the master of steamboat, without cause or provocation, assaulted and beat him with an iron pipe, inflicting severe and permanent injuries, and then and there forced and compelled him to leave the vessel, and refused and declined to furnish libelant with transportation to his home port, or to pay him the wages he had earned while serving in the capacity of a seaman or mariner, to his damage in the sum of $5,000.

The respondent in his answer denied that John Lynch was "master of the vessel," that any assault was made upon libelant as recited in the libel, and averred that, if any assault did in fact take place, he is not liable therefor, for the reasons, first, that the assault did not take place on the boat or river, but on the Arkansas bank; second, that the assault, if it did take place, was a personal difficulty between Lynch, one employé of the boat, and the libelant, another employé on the boat; that whatever Lynch did in this respect was clearly without the apparent scope of his authority and not binding upon the respondent, who was not present and had not authorized Lynch to make such assault. He also denied that he or any one else connected with the vessel had anything to do with the libelant leaving the boat. The respondent further averred that, if the plaintiff suffered any damage whatever on account of injuries inflicted by Lynch, such injuries were caused by acts of Lynch upon the shore in the state of Arkansas, and for this reason clearly without the jurisdiction of a court of admiralty.

The District Court overruled the plea to its jurisdiction and awarded damages to the libelant in the sum of $1,500, from which decree an appeal was taken to this court.

[1] It is contended by counsel for appellant that the averment that this steamboat "was discharging freight consigned to Upper Turnages Landing, state of Arkansas," is not equivalent to an averment that this freight was then being discharged at Upper Turnages Landing, Ark. The language used would fairly inform the average man that this freight was being discharged at the point to which it was consigned; but, even if it were being unloaded at some other point along the banks of the Mississippi river, the presumption would necessarily obtain, in view of the other averments in the libel as to the business in which this

268 F.—30

vessel was employed, that it had not left the navigable waters of the Mississippi to unload this freight.

[2] While it is true that the libel must expressly state the facts on which jurisdiction depends, nevertheless that rule does not require that these facts should be stated in such clear and positive language as to defy technical or hypercritical attack. If the language is sufficiently clear to convey the idea sought to be expressed thereby to men of average intelligence, and especially to those engaged in that particular art, profession, craft, or business, it is also sufficiently clear to meet the needs of modern jurisprudence. Aside from this consideration, however, the libel expressly avers that the libelant "was then and there forced and compelled to leave said steamboat by the aforesaid master," so that it does appear from the libel itself that the assault upon libelant was committed on a vessel subject to the admiralty laws of the United states and plying in navigable waters. The case as stated in the libel comes clearly within admiralty jurisdiction.

The evidence is undoubtedly sufficient to support the finding of the trial court that John Lynch at the time stated in the libel was acting as master of the boat, at least in the absence of its owner, Wolfe, notwithstanding his original employment may have been as clerk. The evidence also sustains the finding of the trial court that Lynch, while so acting as master of the vessel, assaulted and beat libelant on board the steamboat Whisper while it was lying in the waters of the Mississippi river and discharging freight at Upper Turnages Landing. Lynch specifically denies this, but Thomas testifies that when he came back on the boat, after having dropped a package of crackers, Lynch struck him a couple of times with a piece of iron pipe; that he (Thomas) then ran around the boat; that after awhile Lynch came on the left-hand side of the boat and told him to go up forward. This evidence of Thomas is corroborated by Lillie Cooper and George Cooper, who were on the boat at the time. This is all the evidence touching that particular transaction.

After this occurrence on the boat, Lynch ordered Thomas to assist some men in rolling a barrel of sugar up the hill from the landing. The evidence does not disclose how long it was, after he had struck Thomas with a piece of pipe on board the vessel, that he ordered him to assist these men with the barrel of sugar; but it is apparent from the evidence of Thomas himself that it was some considerable time. It was after Lynch had gone around upon the left-hand side of the vessel, which was the side away from the bank, discovered Thomas there, and ordered him forward. While assisting these men to roll this barrel of sugar up the hill from the landing, Thomas slipped and pulled two or three other men down with him. Thomas testifies that at that time Lynch "was behind me with a piece of pipe, and poking me with it, and when I slipped it hit me, and I trotted off a little piece, and he throwed the iron pipe, and the iron pipe hit me and stood me up, and I was too weak; I fell." He further testifies upon cross-examination that after he had fallen, "the engineer, night watchman, kicked me in my head, and the engineer stood me up." Thomas also testifies that Lynch, after throwing the iron pipe and knocking him down, drew a pistol and

threatened to blow his brains out if he came back on the boat; that he did not go back on the boat, but went out through the woods in the country. Later, when he was recalled to the witness stand, he testified that at Upper Turnages he did go back in the deckroom on the boat, but left at the next place. The testimony of other witnesses is to the effect that Thomas did go back on the boat, and remained with it until it reached the next landing place, Reverie, at which point he left it; but there is no evidence whatever that he was compelled by the master, Lynch, to leave the boat at Reverie.

[3] The transaction on the shore was a wholly separate and independent transaction from the assault upon the boat. Whatever may have occurred upon the shore was clearly not a maritime tort, and not within the jurisdiction of a court of admiralty. It was prejudicial error to admit evidence in relation thereto, or to take into account, in the ascertainment of damages, the injuries sustained by the libelant from any assault made upon him on the Arkansas shore, either by the master or the engineer of the vessel. Leathers v. Blessing, 105 U. S. 626–630, 26 L. Ed. 1192; Martin v. West, 222 U. S. 191, 32 Sup. Ct. 42, 56 L. Ed. 159, 36 L. R. A. (N. S.) 592; Johnson v. Elevator Co., 119 U. S. 388, 7 Sup. Ct. 254, 30 L. Ed. 447.

[4] It does not appear, however, that the injury sustained by libelant from the assault and battery on the boat was of so light and trivial a nature as to require the dismissal of the libel. On the contrary, it does appear that he was struck twice with an iron pipe. It is needless to say that these blows must have caused some pain and suffering. This libelant is entitled to recover damages in this action for whatever injury he suffered from the violence inflicted upon him on board the vessel, including such physical and mental pain and suffering as necessarily resulted therefrom. Erie Railroad Co. v. Collins, 253 U. S. 77–85, 40 Sup. Ct. 450, 64 L. Ed. 790; McDermott v. Severe, 202 U. S. 600–611, 26 Sup. Ct. 709, 50 L. Ed. 1162; Middlesex & B. St. Ry. Co. v. Egan, 214 Fed. 747–751, 131 C. C. A. 53; U. S. Express Co. v. Wahl, 168 Fed. 848, 94 C. C. A. 260; Ry. Co. v. Christison, 39 Ill. App. 495; Railway Co. v. Smith, 25 S. W. 1032; Enders v. Skannal, 35 La. Ann. 1000.

It is clear from all the evidence in the case that the major injuries to this libelant were occasioned by the assault and beating upon the shore. For that injury he has a remedy in another forum. He is also entitled to recover in a court of admiralty jurisdiction whatever damages he actually sustained from the injuries inflicted upon him on board the vessel. Spencer v. Kelley, 32 Fed. 838; The Sallie Ion, 153 Fed. 659; The Vueltabajo, 163 Fed. 594.

It is true that by reason of the second assault and beating on the shore, following so closely the first assault upon the boat, that it will be a difficult task for a court to determine the exact amount of damages suffered from injuries inflicted by the master when he struck him with the piece of iron pipe on board the vessel. It would be wholly impossible to do this from the evidence in this record. It may be possible, however, upon the retrial of this case, when the evidence is directed solely to this maritime tort, for a court to ascertain the exact

extent of these injuries and fix an award of damages consistent with that evidence. For this reason the cause will be remanded to the District Court for further proceedings in accordance with the findings and conclusions of this court as above stated.

Judgment reversed; cause remanded.