## CAIN v. ALPHA S. S. CORPORATION et al.

Circuit Court of Appeals, Second Circuit.
August 20, 1929.

No. 367.

718

Hatch & Wolfe, of New York City (Carver W. Wolfe, of New York City, of counsel), for appellants.

Thomas J. Cuff, of New York City (Vine H. Smith, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. ▉ This is an action at law for an assault upon a seaman by a subordinate officer, while both were employed upon an American vessel owned by one of the defendants and operated or controlled by the others. It was committed on shipboard when the vessel lay in a Venezuelan port. Jurisdiction of the District Court is founded upon diverse citizenship. The parties have assumed, and rightly so, that the law applicable to this situation is the general maritime law of the United States. See Roberts v. Skolfield, Fed. Cas. No. 11,-917; Port of New York Stevedoring Corp. v. Castagna, 280 F. 618, 624 (C. C. A. 2); Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 384, 38 S. Ct. 501, 62 L. Ed. 1171; Carlisle Packing Co. v. Sandanger, 259 U. S. 255, 259, 42 S. Ct. 475, 66 L. Ed. 927; Northern Coal Co. v. Strand, 278 U. S. 142, 144, 49 S. Ct. 88, 73 L. Ed. 232. Compare critical articles in 36 Harv. Law Rev. 777; 21 Columbia Law Rev. 645; 55 Am. Law Rev. 685; 53 Am. Law Rev. 749.

The case was left to the jury upon the theory that, if Jackson, the second assistant engineer, actually struck fireman Cain, not in the course of a private brawl, but in the exercise of his authority over him as his superior officer, the defendants would be liable. This theory the defendants dispute, contending, first, that it misstates the rule of the maritime law; and, second, that, even if the law be as stated, the evidence was insufficient to justify a finding that Jackson was acting within the scope of his authority in striking the blows with which he was charged. Both questions were properly saved for review by exceptions to the court's denial of motions to dismiss the complaint.

The alleged insufficiency of the facts may conveniently be considered first, for, if that be disposed of favorably to the defendants, it will be unnecessary to determine the more difficult question of law. Cain's testimony is that he started to go down to the engine room some 40 minutes late for his watch; that on the first landing of the stairway he met the first assistant engineer, and became engaged in an altercation with him concerning his tardiness; that he (Cain) retreated

to the top of the stairs, and from there saw the first assistant engineer talking to Jackson, who was the officer on duty in the engine room; that the latter thereupon proceeded up the stairway toward him. Cain claims Jackson was drunk. What happened when Jackson reached the top of the stairs Cain relates as follows:

"He told me I was a bit late. I says to him, 'Yes, I am a bit late, I overslept;' and he said, 'Late be damned;' and he says to me, and he struck me across the head with a monkey wrench. I fell back like this (indicating), and as I fell back like that, he tapped me over the eye with the monkey wrench. I fell again, right on the deck, and then I got up and I run on my hands and knees away from him. * * * "

Jackson pursued him, saying, "I will teach you to go down on watch, you bastard." Cain ran to the captain and reported that he had been struck by Jackson. The captain, however, says that Cain explained later that his wounds were the result of falling on the deck. This was also Jackson's contention. He denied striking any blow whatever. He says the first assistant told him Cain was drunk; that he thereupon went up the stairs to get another fireman; that Cain had his head in the port engine room door, and "I hollered to him to come on down." Cain did not obey, and Jackson says that by the time he had reached the top of the stairs Cain had fallen down, and was getting to his feet and starting to run away. He admits that he followed Cain along the deck, shouting to him to stop.

▆ Without reciting more of the evidence, it will suffice to say that, assuming the law to be as the court stated it, the evidence raised issues for the jury. Jackson's duty was to get Cain to work, if he thought Cain was able to work. The jury were entitled to find that he approached Cain for that purpose. He himself says, "I hollered to him to come on down." They were also entitled to believe Cain's version of what transpired when the two men met at the top of the stairway. Hence they might infer that Jackson gave the blows for the purpose of compelling Cain's immediate attendance and in connection with reprimanding him for his tardiness. Although excessive violence was used, this is not conclusive that Jackson was not acting in the ship's business. The evidence made it a jury question whether he committed the assault as an officer of the ship, in an effort to maintain discipline and obtain a full engine room crew for the watch of which he was in charge, or struck the blows in a private brawl. In Davis v. Green, 260 U. S.

349, 43 S. Ct. 123, 67 L. Ed. 299, a very different situation was presented. There the killing of the conductor resulted from the engineer's personal rancor, and was not in furtherance of the employer's business. Here we must accept the jury's verdict as a finding that Jackson's blows were not given in a private brawl, but in the exercise of his authority as an officer. Hence we must determine the legal question first mentioned.

▆ The rule of the common law, as established by the weight of modern authority, imposes liability upon an employer for an assault committed by one of his employees upon another, when the former is in a position of authority and acts within the general scope and line of his employment. Encarnacion v. Jamison, 251 N. Y. 218, 167 N. E. 422; Richard v. Amoskeag Mfg. Co., 79 N. H. 380, 109 A. 88, 8 A. L. R. 1426; Fleming v. Tarboro Knitting Mills, 161 N. C. 436, 77 S. E. 309; Rogahn v. Moore Mfg. Co., 79 Wis. 573, 48 N. W. 669; Jebeles-Colias Confectionery Co. v. Booze, 181 Ala. 456, 62 So. 12; Mechem, Agency (2d Ed.) § 1960 et seq.; annotation in 18 L. R. A. (N. S.) 416; 7 Harv. Law Rev. 383 (for historical review by Prof. Wigmore). The plaintiff asserts that the same principle obtains in the maritime law. This the defendants deny, their contention being that a seaman's rights are exclusively those stated in The Osceola, 189 U. S. 158, 23 S. Ct. 483, 47 L. Ed. 760, namely, wages, maintenance, and cure, if the seaman falls sick or is wounded in the service of the ship, regardless of the cause of his wounds, and indemnity for injuries received in consequence of unseaworthiness of the ship, or failure to supply and keep in order proper appliances appurtenant thereto.

Admittedly, the propositions laid down in the opinion are much broader than were required by the actual decision, which was that a seaman cannot maintain a libel in rem to recover indemnity for personal injuries caused by the negligence of the master of the vessel. But the dicta were a considered exposition of the maritime law after a careful historical review of British and European rules, as well as American. After referring to the fact that British law grants a seaman indemnity for injuries received through unseaworthiness of the vessel, the opinion states on page 171 of 189 U. S. (23 S. Ct. 485):

"Beyond this, however, we find nothing in the English law to indicate that a ship or its owners are liable to an indemnity for injuries received by negligence or otherwise in the service of the ship. None such is given in the Admiralty Court Jurisdiction Act of

1861, although it seems an action in admiralty will lie against the master in personam for an assault committed upon a passenger or seaman. The Agincourt, 1 Hagg. Adm. 271; The Lowther Castle, 1 Hagg. Adm. 384. This feature of the law we have ourselves adopted in general admiralty rule 16 [now rule 15; see 28 USCA § 723], declaring that 'in all suits for assault or beating on the high seas, or elsewhere within the admiralty and maritime jurisdiction, the suit shall be in personam only.' "

Having thus directed its attention to injuries resulting from assaults, it would seem strange for the court, had it thought an action in personam would lie against the owners, to have ignored this remedy and to have specified only that against the master. Nevertheless, the propositions laid down in The Osceola opinion cannot be deemed an absolutely complete statement of an injured seaman's rights against his vessel and her owners, in view of the later decision in The Iroquois, 194 U. S. 240, 24 S. Ct. 640, 48 L. Ed. 955. There it was held that for negligent treatment of a seaman after he was injured a right to indemnity existed. Moreover, the appellants concede another exception, namely, the seaman's right to indemnity when the master himself commits the assault. Numerous cases in the lower federal courts, though not with unanimity as to the propriety of a proceeding in rem, have held the ship or her owners liable to indemnify a seaman assaulted by the master, or by another with the master's acquiescence, or by a subordinate of notoriously brutal temper. In the last instance, when the injuries are inflicted by a notoriously brutal officer, liability has been rested upon the duty properly to man the vessel in order to make her seaworthy. The Rolph, 299 F. 52 (C. C. A. 8). For cases relating to liability of ship or owner when the assault is committed by the master himself, or by another in his presence, see The Marion Chilcott, 95 F. 688 (D. C. N. D. Wash.); The Lizzie Burrill, 115 F. 1015 (D. C. Ala.); The Astral, 134 F. 1017 (D. C. E. D. Pa.); The Sallie Ion, 153 F. 659 (D. C. E. D. Pa.); The Vueltabajo, 163 F. 594 (D. C. Ala.); The David Evans, 187 F. 775 (C. C. A. 9); Gabrielson v. Waydell, 67 F. 342 (C. C. E. D. N. Y.); Wolfe v. Thomas, 268 F. 464 (C. C. A. 6); see, also, article in 19 Harv. Law Rev. 418. Gabrielson v. Waydell, 135 N. Y. 1, 31 N. E. 969, 17 L. R. A. 228, 31 Am. St. Rep. 793, which held the contrary, is no longer the law of New York. Encarnacion v. Jamison, supra.

It is true that this doctrine is of comparatively recent growth. In Curtis, Merchant Seaman, p. 339, the learned author says: "Whether the shipowner would in any case be liable for the consequential injuries occasioned by excessive punishment of a mariner, by a master, is a point which I have never known to be raised." On general principles of agency, as they were then understood, he proceeds to argue against liability. Compare, however, the statement, at page 26, that it is part of the obligations implied from the mariner's contract that he "shall be treated with decency and humanity by the master and the officers, and by his shipmates." It is true, also, that the Supreme Court has never passed upon the question. We believe, however, that the above cases correctly declare the maritime rule that a shipowner is responsible for injuries to a seaman resulting from an unjustifiable assault by the master, or by another with his acquiescence, committed in furtherance of the ship's business. We conclude, therefore, that The Osceola cannot be deemed to have laid down a complete statement of an injured seaman's right to indemnity, and that the question of the defendants' liability in the instant case is open to independent consideration.

While conceding that the shipowner is bound by an obligation, implied from the seaman's contract of employment, to furnish him humane and decent treatment, the appellants assert that this obligation is violated only when brutality is committed by the master, or by another with the master's acquiescence. No case has been cited which extends this theory of liability to the acts of a subordinate officer committed outside the presence of the master. We pass without decision the question whether this theory is necessarily so limited, for it is not upon this theory, but upon the theory of respondeat superior, that the plaintiff relies to sustain his right to recover.

To the theory of respondeat superior the appellants reply that all members of a vessel's crew, except perhaps the master, are fellow servants as between themselves, and that the fellow-servant exception to the doctrine of respondeat superior includes willful as well as negligent acts of a fellow employee. The fellow-servant defense has almost always been stated as applicable to injuries caused by negligence. Only two cases have been found which discuss its applicability to a willful assault. In Memphis & Newport Packet Co. v. Hill, 122 F. 246 (C. C. A. 8) the contention was rejected. In Gabrielson v. Waydell, 135 N. Y. 1, 31 N. E. 969, 17 L. R. A. 228, 31 Am. St. Rep. 793, it prevailed, but, as already noted, that case

has very recently been overruled, though chiefly upon the ground of subsequent congressional legislation. Encarnacion v. Jamison, supra.

In the absence of compelling authority we see no valid reason to extend the fellow-servant exception beyond the field of negligence. Even in its restricted scope it has not escaped criticism, and has by statute frequently been curtailed or abolished. It was abolished in respect to negligent injury of railroad employees engaged in interstate commerce by the Federal Employers' Liability Act (35 Stat. 65 [45 USCA §§ 51–59]), and the benefits of that legislation were by the Jones Act extended to seamen who suffer personal injury in the course of their employment (41 Stat. 1007 [46 USCA § 688]). While the plaintiff's cause of action cannot, in our opinion, be rested upon the Jones Act (compare Encarnacion v. Jamison), which by incorporating the Federal Employers' Liability Act requires negligence as the foundation of liability (Chesapeake & O. Ry. Co. v. Stapleton [May 27, 1929], 279 U. S. 587, 49 S. Ct. 442, 73 L. Ed. 861), the statutes may appropriately be referred to as showing the legislative tendency already mentioned.

Precise authorities are surprisingly few and unconvincing. The General Rucker, 35 F. 152 (D. C. W. D. Tenn.), was a libel in personam against the owner for personal injuries caused by an assault by the mate. The libelant was decreed $100 damages and costs. This case is of little value as a determination of the maritime rule, for the court says (page 157):

"It is not at all necessary to consider here the question whether a court of admiralty proceeds against the owner of a vessel upon distinct grounds of its own growing out of the peculiar relations that exist as between the owner and those engaged about navigating a vessel of commerce, in cases like this, or only enforces the ordinary common-law principles of master and servant; for it is conceded by the learned counsel that the defendant is liable on the common-law principle, and to that extent certainly; and, I find no difficulty in adjudging that this case falls clearly within that principle. * * * But, after all, this case falls, in my judgment, within the Tennessee rule of liability. * * * *"

Memphis & Newport Packet Co. v. Hill, 122 F. 246 (C. C. A. 8), affirmed the decree entered for libelant in a libel in personam for an assault committed by a deck hand who had been selected by the officer in command of the vessel to act as captain of the watch.

The opinion holds that the fellow-servant doctrine has no application to a willful assault by one acting as a subordinate officer; it applies the general principles of agency, and cites with approval The General Rucker, supra. There is no consideration of the question whether the maritime rule differs from that of the common law.

The Wawalona, 1925 A. M. C. 552, an oral opinion by Judge Wolverton, appears to hold that the owner is not liable for an assault committed by the chief officer, but that he himself is.

These three cases are the only ones discovered in which a seaman has attempted to hold the shipowner for an assault committed by a subordinate officer without the acquiescence of the master. None of them discuss the possibility of the maritime law having a rule different from the common law, or the possible inconsistency between holding a shipowner for the willful torts of a subordinate officer and exempting him for the latter's negligent torts.

If the exemption of the shipowner from liability, beyond maintenance and cure, in case of negligent injury to a seaman, is to be explained on the fellow-servant doctrine, as intimated in The Osceola, we should have little difficulty in refusing to extend the doctrine to the case of willful torts committed in furtherance of the ship's business. But Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 38 S. Ct. 501, 62 L. Ed. 1171, seems to suggest that the exemption is based on a much broader principle. That case was an action at law removed from a state court on the ground of diverse citizenship. Plaintiff, a fireman, sought indemnity from the shipowner for injuries caused by negligence of the second engineer. Recovery beyond maintenance and cure was denied. The court adopted as the applicable substantive law the maritime rule recognized in The Osceola.

The most significant point for present purposes is the court's treatment of section 20 of the Act of March 4, 1915 (38 Stat. 1164), which provided: "That in any suit to recover damages for any injury sustained on board vessel or in its service seamen having command shall not be held to be fellow servants with those under their authority." If the doctrine of respondeat superior were generally applicable to maritime torts, this statute would seem to have destroyed the fellow-servant defense and to render the vessel owner liable for negligent injuries caused by a subordinate officer. But the court held the statute irrelevant, saying: "But the Maritime Law imposes upon a shipowner liability

to a member of the crew injured at sea by reason of another member's negligence without regard to their relationship; it was of no consequence, therefore, to petitioner whether or not the alleged negligent order came from a fellow servant; the statute is irrelevant."

The implication seems to be that the shipowner's liability does not depend on the rule of respondeat superior, but results as an incident of the ownership of the vessel. If the maritime law does not recognize the principle of respondeat superior as applied to negligent acts of a subordinate officer, it is logically consistent to suppose that it does not recognize it as applied to the willful assaults of such an officer. Certain writers on the subject have denied that the common-law rule of respondeat superior has received general acceptance in the admiralty. See 19 Harv. Law Rev. 445; 36 Harv. Law Rev. 777. Moreover, the appellants urge, it can scarcely be deemed without significance that in all the early cases the assaulted seaman sued only the master or the subordinate officer who committed the assault. Roberts v. Skolfield, Fed. Cas. No. 11,917; Anderson v. Ross, Fed. Cas. No. 361; Backstack v. Banks, Fed. Cas. No. 711; Hanson v. Fowle, Fed. Cas. No. 6,042; Thomas v. Lane, Fed. Cas. No. 13,902; Murray v. White, 9 F. 562 (D. C. Me.).

Spencer v. Kelley, 32 F. 838 (C. C. N. D. Ohio) was the first attempt which has come under our observation to hold the owner liable for an assault by the master upon a seaman. It reports the court's charge to the jury, and, so far as appears, the court charged according to the common-law rule, without considering whether the maritime rule was different. Judge Brown, in The City of Alexandria, 17 F. 390 (D. C. S. D. N. Y.), recognized the absence of authority as strong evidence that the maritime law did not compel payment of indemnity for injuries due to negligence. Although absence of authority is by no means conclusive, it may properly be deemed evidence of the general opinion of the profession.

While not unmindful of the force of the foregoing arguments, we remain unconvinced that the maritime rule differs from that of the common law in respect to the liability of the employer for willful torts committed by a subordinate officer of a vessel acting within the scope and course of his employment. Admittedly the principle of respondeat superior makes liable the shipowner when the assault is upon a passenger. No reason except the fellow-servant doctrine has been advanced for its nonapplicability when the assault is upon a seaman, and, as already indicated, that doctrine should not be extended to cover willful torts. We do not believe that the dicta of The Osceola, or the implications of the Chelentis decision, should be pushed beyond the field of negligence, with which those cases dealt.

Nor is the absence of early authorities recognizing the shipowner's obligation, sufficient evidence that no such obligation exists. The maritime law, no less than the common law, is not incapable of growth by judicial decision. Changes in conditions under which commercial shipping is conducted, as well as changes in economic notions of where loss suffered in the course of a business should fall, should be reflected in the action of the courts, though it result in filling pages which history left blank. Absence of precedent did not preclude recognition by the common-law courts of the modern view that a principal should answer for the willful torts of his servant committed in the furtherance of his master's business. The principle is equally applicable to the business of shipping, and we find no binding authority which forbids its application in the maritime law. On the contrary, such authority as there is favors it.

In addition to the cases already cited reference may be made to Hughes, Admiralty, § 106, where the author asserts that the owner would be liable "if the assault was made by any of the crew within the course of his employment," and to the views of the author of a scholarly article in 19 Harv. Law Rev. 418. As suggested in the article last mentioned, a law which would excuse the owner when the officer is careful to exercise brutality upon a well seaman, but declares him responsible, should the mariner happen to be ill at the time of the assault, could scarcely be deemed satisfactory.

It is urged that the statute which imposes liability upon the master or the ship or her owner in case the master negligently permits the escape of any officer who has inflicted corporal punishment upon a seaman (46 USCA § 712) indicates that no such liability existed without the statute. To this we cannot accede. The statute creates a new ground of liability against the master, and the declaration that ship or owner are also liable may have been inserted to preclude the contrary inference, which might have been drawn had the master's liability alone been mentioned.

While we recognize that the question is not free from doubt, we hold that the shipowner is liable for the willful assault of a subor-

dinate officer acting as such in the ship's business. The denial of the motions to dismiss the complaint was, therefore, not error.

■ Complaint is made because the court refused to charge that no subordinate officer has authority to administer discipline without express delegation from the master. As an abstract legal proposition this may be true. United States v. Taylor, Fed. Cas. No. 16,-442; Murray v. White, 9 F. 562 (D. C. Me.). But, if charged in the form requested, it would have been likely to mislead the jury into the belief that the defendants could not be held responsible for Jackson's assault, if they should find he committed one. Obviously a blow with a monkey wrench was not a proper way to administer discipline, and the jury had in effect been previously so told. Jackson, as Cain's superior officer, had authority to order him on duty, or to reprimand him for being late, and if in connection with such an order or such a reprimand he used physical violence, for the purpose of forwarding the ship's business, the owner may be held liable. We do not regard as error the refusal of the requested charge.

■ The claim that the verdict is excessive was presented to the District Court upon a motion for a new trial. There was no abuse of discretion in denying that motion. The amount of the verdict is not for us to review. See Ramsdell v. Goumis, 228 F. 864 (C. C. A. 2); Detroit Taxicab & Trans. Co. v. Pratt, 2 F.(2d) 193 (C. C. A. 6); Bowman-Hicks v. Robinson, 16 F.(2d) 240 (C. C. A. 9); New York, L. Erie & W. R. Co. v. Winter, 143 U. S. 60, 75, 12 S. Ct. 356, 36 L. Ed. 71.

The judgment is affirmed.